## NATHANIEL K. BURKETT *vs.* ARTHUR TROWBRIDGE.

*Husband's liability to support wife—when implied.*

One who in consequence of a disagreement arising between himself and his wife carried her to her father's house and left her there, where she remained till she obtained a divorce, was held liable to her father for her board while there, without any express contract between them, notwithstanding the fact that the defendant paid his wife an agreed sum, in lieu of alimony, upon her proceedings for divorce.

ON REPORT.

ACTION on account annexed for board of defendant's wife for the thirty-eight weeks next preceding the rendition of a decree of divorce obtained, upon her libel against him, on the twelfth day of March, 1869. It was agreed to reckon it at $3.00 per week, and that if the plaintiff, upon the evidence, was entitled to recover at all, judgment was to be entered in his favor for $114.00 and interest from the date of the writ. The defendant's wife was

the plaintiff's daughter. The husband and wife did not live happily together and had separated for short spaces of time before June, 1868; but, upon a disagreement arising between them in that month, he then carried her to her father's house and left her there, where she remained until her divorce was granted. The plaintiff testified that he " made no contract with him [defendant] as to board. At one time when he was there I had a talk with him relative to her board. They were then making arrangements for her to get divorced; it was a month or two before the divorce was granted. I said to him I didn't know but I could collect a bill for board. He said he didn't know about that, whether I could or not. The first time he came, after June, I asked him if he thought they could live together in the way they had been living. He replied that he didn't want to live with her. This was about four weeks after he brought her to my house." Just after haying in 1868 the plaintiff and his daughter went to the defendant's house and took away her clothing. Nothing then said about her being with her father, or about price of board. On cross-examination the plaintiff stated that his daughter frequently came home, but he claimed nothing for board except for the period above specified; that she came home on account of domestic troubles, and said : " I received her as my daughter. She applied for divorce. They agreed on terms. I was at Mr. Gould's office to finally settle up her divorce case for her and receive the money for her; she managed her own case otherwise. Nothing was said about her board when her husband first left her. I did not know then why she came home, unless it was on a visit; when he went away I supposed it was something more than a mere visit. He made no promise to pay her board. At the time of settlement in Gould's office I made no claim for board; nothing was said about it. At the time of final adjustment I said to him that I didn't know but I could collect board."

The plaintiff introduced, subject to objection, the record of the divorce case.

The defendant testified, in his own behalf, that he carried his

wife to her father's at her request. "Nothing said about board until I went to make final adjustment. I had no expectation that board would be charged to me. When I paid the money for adjustment I did not understand that there was any claim for board. The terms of the divorce were arranged between the parties. I understood the money paid settled everything. I asked her, when I carried her up in June, 1868, when she was coming back; she did not answer me. I gave my consent to their taking her clothes." The defendant's counsel testified that there were cross libels; his was dropped, hers prosecuted, and a sum mutually agreed upon paid her; that he made the adjustment and paid over the money under instructions to settle everything; that at no interview did the plaintiff claim board; and counsel did not understand that he made any claim for board. He said, on cross-examination, "I did not know that there was any claim for board. My client had not informed me that there was any claim made for board. The subject was not mentioned by me or Mr. Burkett." He added, on re-direct examination, "My client told me the conversation about board. He stated the facts and asked if he were liable for board and I told him he was not."

The case was then reported to the court, with jury powers, under the agreement as to damages before stated; to be determined on such of the testimony as was legally admissible, drawing legitimate inferences therefrom.

*A. S. Rice,* for plaintiff.

I. If husband and wife separate by mutual consent, without any provision for her maintenance, he is liable for her necessaries, and sends credit with her to that extent. 2 Kent's Com. (6th ed.) 146; *Mayhew* v. *Thayer,* 8 Gray, 172; *Emmett* v. *Norton,* 8 C. & P. 506; *Dixon* v. *Huwell,* Ib. 717; *Rumney* v. *Keyes,* 7 N. H. 571.

II. The father of the wife, without special contract, can maintain an action for such necessaries, notwithstanding alimony or allowance granted by court on libel for divorce on wife's petition.

*Hancock* v. *Merrick*, 10 Cush. 41 ; *Burlen* v. *Shannon*, 14 Gray, 433 ; *Reynolds* v. *Sweetser*, 15 Gray, 80 ; *Dowe* v. *Smith*, 11 Allen, 107.

*Gould and Moore*, for defendant.

This is a question of contract, to be proved in some legal method. Plaintiff must prove a promise to pay this board. None was expressed, and Burkett expressly swears there was " no contract." Can he now ask the court to imply that which he says had no existence ? Without this statement, the law implies none from the admitted facts. There is no evidence that she was compelled to leave her husband's house or justified in doing so. The allegations in the libel no evidence in this suit, because the plaintiff was not party or privy to that judgment. *Burlen* v. *Shannon*, 3 Gray, 387. She was taken to her father's by her own request. Each party libelled the other, and then an adjustment was effected by mutual consent ; but the original separation was her own act, not consented to by her husband. It was not originally intended by her to be final.

The board was not furnished upon the husband's credit. *Dowe* v. *Smith,* 11 Allen, 107. The plaintiff's language and acts show this. He received her as his daughter. His conduct at the settlement of the divorce suit shows he had no intention then to charge board, so could not have originally furnished it on credit of the husband. To make this claim now is not honest.

The relation between the parties was such that no promise of compensation is implied from the mere fact of her being at her own father's house. · 1 Parsons on Cont. 529, 530, note *e ; Fitch* v. *Peckham*, 16 Vermont, 150 ; *Andrews* v. *Foster*, 17 Vermont, 556 ; *Guild* v. *Guild*, 15 Pick. 130 ; *Alfred* v. *Fitzjames*, 3 Esp. 3 ; *Weir* v. *Weir*, 3 B. Monroe, 647 ; 1 Bishop on Mar. and Divorce, §§ 568–572, where the cases of *Hancock* v. *Merrick*, 10 Cush. and *Burlen* v. *Shannon*, 3 Gray, are criticised and questioned.

Burkett v. Trowbridge.

BARROWS, J. The defendant carried his wife to the house of her father, the plaintiff, in June, 1868, as he says at her request, and left her there, and never afterwards requested her to return to his home, or made any provision for her support. The somewhat scanty detail of the circumstances and of the conversations which occurred between the husband and wife at this time is, however, sufficient to satisfy us that he understood perfectly when he carried her there that she was going, not upon a visit merely, but with the intention of separating from him for an indefinite time. The paucity of evidence on his part as to the cause of the separation is somewhat suggestive. There is absolutely nothing tending to show that she was in fault in thus leaving him, or that he did not consent both to her going and remaining. At an interview between the father and the husband, about four weeks after he had carried her to her father's house, the father testifies, " I asked him if he thought they could live together in the way they had been living. He replied, he did not want to live with her." A week or two later, and after a libel for divorce, sued out at her instance, had been served upon him, he consented to her taking her clothing, when she and the plaintiff went for it. She remained at her father's house until she had obtained a decree of divorce, in March, 1869, and this suit is brought against the husband for her board during this interval. But the testimony negatives the idea of any express contract on the part of the defendant to pay the plaintiff for boarding his wife. All that ever passed between them on the subject was about a month before the divorce was granted, when the plaintiff said to the defendant that he didn't know but he could collect a bill for board, and the defendant questioned his right to do it.

Is there an implied promise, under the circumstances above stated? As the parties have chosen to present the case, it was one of separation by mutual consent, without fault on the part of the wife, and with a knowledge on the part of the husband that the plaintiff was furnishing the support and maintenance which he himself was under a legal obligation to provide. We do not think

that he can rid himself of this obligation by carrying her to her father's house under such circumstances, even though he may feel tolerably certain that, whether he pays, or promises to pay, or says nothing about it, she would not be turned out of doors by her father. The defendant has no right thus to impose a burden, which by law is his, upon one to whom it does not legally belong, unless he expects and intends at the same time to pay what it is reasonably worth.

We do not use the record of the proceedings in the divorce suit brought by the wife against the husband in this case for any purpose except to establish their legal status during the period covered by the account annexed to the writ. Starkie lays down the rule thus: "Mere proof of the marriage is *prima facie* evidence of the husband's liability, and it lies upon him to discharge himself by evidence. For although they part by mutual consent, the husband lies under a legal obligation to support the wife, unless she has forfeited her right to maintenance by misconduct, and consequently he is liable for necessaries supplied to her, unless he can show that he himself maintains her, or that she has an adequate provision from some other source." Starkie on Evidence, Pt. 4, Vol. 2, p. 696, 1st Am. Ed. And the authorities concur in holding that the husband's liability for necessaries for the wife, in case of separation by mutual consent, still continues, unless he exonerates himself from it by fitting proof. *Mayhew* v. *Thayer*, 8 Gray, 175, and authorities there cited.

A promise is implied, then, in a case of this description, unless there is something in the evidence to show an understanding that the board was a gratuity. So far as the circumstances under which the defendant carried his wife to plaintiff's house are developed, it does not seem to us that he could reasonably expect that her board at her father's should be so considered. It was plainly, from the very first, not understood by him to be a visit. It was simply a leaving her there, without any provision for her support, trusting it may be to the paternal instinct to keep her from want. Did the father have any intention to relieve the defendant from

the support of his wife, and to take it upon himself to support her gratuitously? What little talk they did have upon the subject looks the other way.

Nor can it be pretended that the claim for board was adjusted when the question of alimony to the wife was disposed of by agreement. The only time that the claim for board had been in any manner asserted previously, it was repudiated by the defendant. At that time nothing whatever was said about it by either party. It is impossible to infer that it was included in that adjustment.

Neither the fact that the plaintiff was the father of the wife, nor his intervention in the adjustment of the alimony, can properly preclude him from recovering here. *Hancock* v. *Merrick*, 10 Cush. 41; *Burlen* v. *Shannon*, 14 Gray, 434; *Dowe* v. *Smith*, 11 Allen, 107. *Judgment for plaintiff for* $114.00 *and interest from the date of the writ.*

KENT, WALTON, DICKERSON, and DANFORTH, JJ., concurred.