## EWING and Others *v.* GRAY and Others.

The statute provides for but one new trial, as a matter of course, in actions brought to recover real estate.

A deed fair and valid upon its face, is evidence of an honest transaction; and, until it is assailed by evidence, effective as proof, that it was obtained by the fraud of the grantee, he is not required to adduce any evidence in its support.

A. purchased a tract of land at sheriff's sale, and subsequently conveyed it to the wife of *B. Held*, that, although the circumstances of the case may tend to induce the conclusion that *A.* purchased at the instance and with the money of *B.*, yet the conveyance to the wife must be held valid, unless she is shown to have participated in some way in the fraudulent conduct of *B.*

An instruction should be based upon a state of facts assumed to have been proved by all the evidence in the case bearing upon it, and not by a part thereof only; and this rule is especially applicable to cases involving the question of fraudulent intent, which is generally a question of fact.

The wife is not bound by the acts and declarations of her husband unless she had knowledge of them.

Where the wife receives money during coverture, which is left under her control and management by the husband, and which they both treat as her separate property, the jury may, from these circumstances, find that she was the sole owner of it.

Where a wife, with money belonging in part to herself, and in part to her husband, for the purpose of delaying and defrauding his creditors, causes his lands to be bought in at sheriff's sale, and afterwards conveyed to herself, her title, thus acquired, is fraudulent and void as to such creditors.

The question of fraudulent intent in such cases is one of fact; but where the legal effect of an instrument, as it appears on its face, is to hinder or delay creditors, the Court will, in the first instance, pronounce it void.

*May Term,*
**1859.**

EWING
v.
GRAY.

APPEAL from the *Ohio* Circuit Court.

*Tuesday,*
*May 24.*

DAVISON, J.—*John Ewing, John Andrews,* and *Matthew H. Bevins,* brought an action in the *Ripley* Circuit Court against the appellees, who were the defendants, to recover a tract of land in *Ripley* county. There was a trial which resulted in a verdict for the plaintiffs. The defendants, as a matter of right, demanded a new trial, which was granted; and upon their motion, the venue was changed to *Ohio* county, in which, upon a second trial, the defendants obtained a verdict and judgment; whereupon the plaintiffs demanded a new trial, as a matter of right, which was refused, which refusal is assigned for error.

Anterior to the revision of 1852, a new trial could not be granted in any case without cause shown to the Court; but in the present code, there is a statutory rule of practice relative alone to actions for the recovery of real estate, which says: "The Court, rendering the judgment at any time within one year thereafter, upon the application of the party against whom judgment is rendered, his heirs, &c., and upon the payment of all costs, &c., shall vacate the judgment and grant a new trial. The Court shall grant but one trial, unless for good cause shown." 2 R. S. p. 167, § 601.

. It is argued that the concluding branch of the section, namely, "the Court shall grant but one trial," when reasonably construed means, that only one new trial shall be granted to the same party. We think otherwise. The words used are sufficiently explicit, and plainly indicate a legislative intent that, under the enactment, not more than one new trial, as a matter of right, shall be granted in the same cause. We perceive no reason why the words quoted should not be held to mean what they literally im-

port. When thus construed, they are obviously consistent with the entire section, and no injustice results; because the party who desires a new trial can attain his object upon good cause shown. The plaintiffs were not, in our opinion, entitled, as a matter of right, to a new trial.

The evidence shows that one *James Parker*, in *March*, 1855, recovered a judgment in the *Ripley* Circuit Court against *Henry L. Gray*, one of the defendants, for 1,307 dollars, upon which an execution issued. By virtue of that execution, the sheriff levied on, appraised, and sold the lands in dispute to the plaintiffs for 1,100 dollars, and in pursuance of the sale, made them a deed, under which they claim title, &c. It was further proved that in *April*, 1853, and before *Parker* recovered his judgment, one *Joseph Muir* obtained two judgments in the same Court against the said *Gray*, for the aggregate amount of 280 dollars. These judgments were without relief, &c. Executions were issued upon them, and levied on the same lands, as *Gray's* property, which, on the 18th of *March*, 1854, were sold by the sheriff to *Mary Gray*, the daughter of *Henry L. Gray*, for 320 dollars, which she then paid to the sheriff, who, on the day of sale, made her a deed. After this, on the 2d of *September*, 1854, *Mary Gray*, the sheriff's vendee, conveyed the lands to her mother, *Elizabeth Gray*, the wife of *Henry L. Gray*. Under this conveyance, *Elizabeth Gray*, who was a defendant, claimed title, &c.

The evidence being closed, the plaintiffs moved to instruct the jury as follows:

"If the plaintiffs have proved that *Henry L. Gray* was indebted, at the time of the sale on the *Muir* executions; that just before the sale he borrowed money for the avowed purpose of saving his property from such sale; and that the land in question was bid off by his daughter, who had no means of her own to pay therefor, and was shortly after conveyed by her to her mother, *Elizabeth*, who, with said *Henry* and the family, still occupies the same, as before; it behooves *Elizabeth Gray* to prove that the land was paid for with her own money; and without such proof the jury

may presume that the same was paid for by the money of
*Henry L. Gray;* and if so, should find for the plaintiffs."

This instruction the Court refused, on two grounds:

1. It assumes that *Elizabeth Gray* was bound by the acts and statements of her husband in her absence.

2. The law makes no presumption from the enumerated circumstances, but leaves the fraud to be found, or not, by the jury, from all the circumstances shown, the charge enumerating only a part of them.

The refusal of the instruction for the reasons given by the Circuit Court seems to be correct. The deed to *Elizabeth Gray* is, upon its face, evidence of an honest transaction, and until assailed by evidence, effective as legitimate proof that it was obtained by her fraud, she is not required to adduce evidence in its support. The circumstances detailed in the instruction may tend to induce the conclusion that the purchase at sheriff's sale was made at the instance of *Henry L. Gray*, and with his money; still the deed under which *Elizabeth* claims must be held valid, unless she has, in some way, participated in his fraudulent conduct. *Gatling* v. *Rodman*, 6 Ind. R. 289.

The second ground of refusal is also tenable. An instruction prayed should be based upon a state of facts assumed to have been proved by all the evidence bearing upon it, and not by a portion only of the evidence. 10 Ind. R. 87. The rule thus indicated is especially applicable to the case before us, where the question of a fraudulent intent is a question of fact, and not of law. 1 R. S. p. 303, § 21.—4 Ind. R. 388.—6 *id.* 176.

But the main error of the instruction is, that it assumes to bind *Elizabeth Gray* by the acts and declarations of her husband, when it does not assume that they were even within her knowledge. On this subject, however, the jury were correctly instructed. The Court, in its general charge, says:

" If you are satisfied from the evidence that there was a fraudulent combination between *Henry L. Gray*, his wife and daughter, or between him and his wife, to cause the land to be bought in by his means, and afterwards to be

conveyed to her to defraud *Parker*, then his acts and declarations in carrying out the fraudulent plan are evidence against her."

The evidence further shows that *Elizabeth Gray*, in the year 1848, received 210 dollars, which was paid to her in part payment of a legacy bequeathed to her by her father. When this payment was made, there was still a balance coming to her; but the amount of the legacy was not shown, nor was there any evidence tending to show that she ever received, on account of the legacy, more than the 210 dollars. It was also proved that from the time she received the legacy, until the spring of 1854, she kept some money in a drawer, supposed, from the looks of it, to be 300 or 400 dollars, which she claimed as her own; and that on the morning of the day of the sale on the *Muir* executions, she handed her daughter, *Mary Gray*, the money, and directed her to bid off the land in question, which she, *Mary*, accordingly did, and with the money so handed to her paid for the same.

In relation to this evidence, the plaintiffs moved an instruction to the effect that the money received by *Elizabeth Gray* from her father's estate became the property of her husband; and that no agreement between them, without the intervention of a trustee, could make it her separate property. This was also refused, and, we think, correctly. The money, though bequeathed to *Elizabeth*, may, at the time it was received, have become the property of her husband. Still, the proposition "that no agreement between them, without the intervention of a trustee, could make it her property," cannot be maintained. A married woman may acquire a separate estate in personal property by gift from her husband, where the transaction is *bona fide*, and not intended as a cover for fraud. 1 Bright's Husband and Wife, p. 29, *et seq.* And in such case, the interest of the wife will be recognized and protected without the intervention of a trustee. 2 Story's Eq. Juris., § 1380. This was the settled rule in equity, and is, of course, included in our new system of practice. But in reference to the point involved in the instruction the Court told the jury:

"If the evidence shows that the money when received, and afterwards, was treated by *Gray* and his wife as her separate property, and left under her control and management by her husband, it may be evidence tending to show that it was her separate property, and that she was the sole owner of it." This charge is consistent with the weight of evidence, and was, in our opinion, a proper direction to the jury.

Another instruction moved by the plaintiffs, and refused by the Court, reads thus:

"If, when the executions ·under which *Mary Gray* purchased were levied on the land, *Henry L. Gray* was insolvent, and owed *Parker* the debt for which his judgment was afterwards rendered; and if *Elizabeth Gray*, having 210 dollars of her own money, added the same to 110 dollars of *Henry L. Gray's* money, and employed their daughter, *Mary Gray*, to bid off the land with said moneys, for the purpose of protecting it from the existing debts of *Henry L. Gray*, she, *Elizabeth*, cannot hold the same against the plaintiffs, but at most can only have, by subrogation, a lien on the land for the money she actually advanced."

Admitting the facts assumed in this instruction, the plaintiffs were evidently entitled to a verdict. But we perceive no ground upon which *Elizabeth Gray*, having joined her husband in the purpose of defrauding his creditors, would be allowed to claim a lien upon the land for money advanced by her. In view of the case made by the proposed instruction, she must be deemed a fraudulent party; and to such a party the law extends no favors. But the refusal cannot be assigned for error; because the Court, in its charge, virtually covered the ground assumed in the refused instruction. The jury were thus instructed: "If the money with which the land was bought belonged in part to *Elizabeth Gray* as her separate property, and in part to *Gray*, and with the gross sum, she, *Elizabeth*, caused it to be bought in, and conveyed to her, for the purpose of hindering, delaying, and defrauding the creditors of *Gray*, *Parker* being one of them, her title, thus

acquired, must be regarded as fraudulent and void as to such creditors, and it affords her no defense to the action." 5 Ind. R. 322. As we have seen, the statutory rule is that "the question of a fraudulent intent is a question of fact and not of law." It is true, there is an apparent exception to this rule. Where the legal effect of the instrument, as it appears on its face, would be to hinder or delay creditors, the Court may, in the first instance, pronounce it void. *Jenners* v. *Doe*, 9 Ind. R. 461. But here the rule obviously applies; because the deed set up in the defense, of itself, indicates a legal transaction, and whether it was or was not made to defraud creditors, is a pure question of fact. In this case, that question was, by the charge of the Court, fairly presented and properly left to the jury.

The evidence is, to some extent, conflicting; but it was for the jury to reconcile the conflict in accordance with its weight.

We are not inclined to disturb the verdict.

*Per Curiam.*—The judgment is affirmed with costs.

*P. L. Spooner* and *A. Brower*, for the appellants.

*I. W. Robinson* and *W. S. Holman*, for the appellees.