ALLEN *v.* SELIG DRY GOODS COMPANY ET AL.

[No. 13,332.   Filed March 7, 1929.   Rehearing denied June 18, 1929.
Transfer denied November 15, 1929.]

*Little & Little* and *Theophilus J. Moll,* for appellant.
*Newberger, Simon & Davis,* for appellees.

McMAHAN, P. J.—Appellee sued Joseph T. and Pearl M. Allen for the value of a fur coat alleged to have been sold and delivered to them at their special instance and request, and for which they agreed to pay $198.50. Judgment was rendered against Joseph T. Allen, from which he appeals.

Appellant was a railroad employee earning from $150 to $160 a month, and owns no real estate. In 1919, Ethel Allen, the then wife of appellant, made arrangements to open a credit account with appellee, in the name of her husband, Joseph T. Allen. From that time until some time in 1921, Ethel Allen purchased

goods at appellant's store and they were charged to and paid for by appellant. In 1921, owing to a dispute between appellant and his wife, the latter opened a charge account in her own name, and, so far as appears from the evidence, she thereafter never purchased any goods and had them charged to the account of her husband. Appellant and Ethel Allen separated October 19, 1924, and were divorced in December, 1924. Following this separation, appellant informed his wife that he had stopped her charge account, and thereafter all goods purchased by her were charged to her account and paid for by her. In March, 1925, appellant married a second time, his second wife being Pearl M. Allen, with whom he lived until September, 1926, when they finally separated. When the coat was purchased by Pearl M. Allen, an action for divorce was pending, and appellant was paying his wife alimony *pendente lite* in an amount fixed by the court. Later, a divorce was granted to appellant on his cross-complaint. Prior to this separation, the wife had never purchased anything at appellee's store and had the same charged to appellant, and there is no evidence that she ever made a purchase of any one, and had the same charged to appellant, or that he ever gave her authority so to do. On December 16, 1926, while she was living apart from her husband, Pearl M. Allen purchased the coat in question and had the same charged to appellant, who, after receiving a statement from appellee the following month, called at appellee's store January 3, 1927, and had a conversation with the credit manager. The evidence is conflicting as to what was said by the parties at this time, but it suffices to say appellant denied the right of his wife to charge the coat to his account, and refused to pay for the same. When this purchase was made, and for many years prior thereto, there was an organization in Indianapolis known as "the Merchant's Association," which was

organized to study the needs of retail merchants. Appellee was a member of this organization. It was the custom of this association, through its manager, to secure information relative to those carrying accounts with any of its members and to give its members any information affecting the credit of such customers. It kept a record regarding notices sent out, and when a notice to stop credit was left at its office, it notified its members. The general custom, when such a notice was left with it, was to call the house likely to be interested and that night to repeat the notice in a bulletin mailed to all members. When the first Mrs. Allen opened the account in 1919, appellee called the Merchant's Association and received information from it as to whom Joseph T. Allen was. The record kept by the Merchant's Association shows that, on October 18, 1924, appellant called at its office and placed with it a stop-credit notice, and that, on October 20, it issued its bulletin to that effect. The manager of the association testified that he personally dictated the bulletin and mailed it to appellee in the regular list of its members. Appellee's credit manager, however, testified that he never received such a bulletin. Appellant testified that he went to appellee's store in October, 1924, to close his account, this being the time when he and his first wife separated and when she opened an account in her own name. When the coat in question was purchased and the wife requested that it be charged to appellant, appellee's credit manager ascertained that appellant was still in the employ of the railroad, and the account was then opened and the coat charged to appellant. Notwithstanding the fact that the account had been dormant for more than two years and that he and his former wife had been divorced, appellee, without making any inquiry as to whether the second wife was living with her husband, and without any attempt to ascertain

whether she had any authority from her husband to make the purchase on his credit, sold the coat to her, and now insists that there is an implied obligation on the part of appellant to pay for the coat; upon the theory that the wife was the agent of the husband and had authority to bind him, and that it had the right to assume that she was living with her husband and to rely upon the assumption that he assented to the purchase and contract made by his wife in his name.

In consideration of the liability of appellant, it must be remembered that he and his wife had separated and were not living together when the purchase in question was made, and that she had no authority as agent for him to make the purchase on his account unless such authority can be implied.

It is a general rule that a husband is bound to support and maintain his wife and to furnish her with necessaries, and during cohabitation there is a presumption arising from that fact, that the husband assents to contracts made by his wife for the supply of articles suitable to their means and station in life. And it was held in *Litson* v. *Brown* (1866), 26 Ind. 489, that there was an implied agency arising from the marriage relation during cohabitation, but that, when the parties cease to live together, a new state of things arises, and with it new rules of law, and that, when there has been a separation, the implied agency of the wife to contract for necessaries arising from cohabitation no longer exists.

We need not enter into a discussion of the liability of a husband for necessaries furnished his wife during cohabitation, but will confine ourselves to his liability after separation and when the evidence does not show that the wife was living apart from the husband by reason of his misconduct or with his consent.

When the wife lives apart from her husband, the

presumption is that she does not have authority to pledge his credit. Schouler, Marriage and Divorce (6th ed.) §100. This is not a case where appellant by a course of dealing with appellee, and by the payment of accounts for goods previously purchased by Pearl M. Allen, had held her out to appellee as empowered and authorized by him to make purchases of goods from appellee, thereby creating an agency by implication. Pearl M. Allen had never made a prior purchase from appellee and had the same charged to the credit of appellant, and the latter had never paid for goods which had been purchased by his wife and charged to him. The instant case is thus distinguished from *Martz* v. *Selig Dry Goods Co.* (1921), 76 Ind. App. 135, 131 N. E. 528, relied on by appellee.

Where a wife is living apart from her husband without sufficient justification, or if the separation was brought about by her misconduct, the idea of implied agency is out of the question. *Wallace* v. *Ellis* (1873), 42 Ind. 582; *Litson* v. *Brown, supra; Watkins* v. *DeArmand* (1883), 89 Ind. 553; *Rariden* v. *Mason* (1902), 30 Ind. App. 425, 65 N. E. 554; *Bevier* v. *Galloway* (1874), 71 Ill. 517; *Schnuckle* v. *Bierman* (1878), 89 Ill. 454; *Corry* v. *Lackey* (1895), 105 Mich. 363, 63 N. W. 418; *Belknap* v. *Stewart* (1893), 38 Nebr. 304, 56 N. W. 881, 41 Am. Rep. 729; *Sawyer* v. *Richards* (1889), 65 N. H. 185, 23 Atl. 150; *Vusler* v. *Cox* (1891), 53 N. J. Law 516, 22 Atl. 347; *Simpson* v. *Dutcher* (1910), 123 N. Y. Supp. 340; *Catlin* v. *Martin* (1877), 69 N. Y. 393; *Thorne & Co.* v. *Kathan* (1879), 51 Vt. 520; *Sturtevant* v. *Starin* (1865), 19 Wis. 285; *Morgenroth* v. *Spencer* (1905), 124 Wis. 564, 102 N. W. 1086; *Denver Dry Goods Co.* v. *Jester* (1915), 60 Colo. 290, 152 Pac. 903, L. R. A. 1917A 957; *Steinfield* v. *Girrard* (1907), 103 Me. 151, 68 Atl. 630; *Bergh* v. *Warner* (1891), 47 Minn. 250, 50 N. W. 77, 28 Am. St. 362; *Porter* v. *Bobb* (1857), 25 Mo.

36; *Gill* v. *Read* (1858), 5 R. I. 343, 73 Am. Dec. 73. The law is well stated in *McCutchen* v. *McGahay* (1814), 11 Johns. (N. Y.) 281, 6 Am. Dec. 373, as follows: "If the husband turns away his wife, he gives her credit wherever she goes, and must pay for necessaries for her; but if she runs away from him, though not with an adulterer, he is not liable for any of her contracts. . . . All persons supplying the necessities of a married woman, separated from her husband, are bound to make inquiries as to the cause of separation, or they give credit at their peril."

Whether the separation is caused by the fault of the husband or of the wife is the decisive test in determining the liability of the former for necessaries furnished the wife while living apart from her husband. *Peaks* v. *Mayhew* (1901), 94 Me. 571, 48 Atl. 172. If, on the other hand, the wife is living apart from her husband as a result of his wrongs, and he refuses to furnish her adequate means of support, the law implies an agency in her to purchase necessaries on the credit of the husband, but the burden of proof that he is the deserter rests on the one who sells to the wife on the credit of her husband. *Strawbridge & Clothier* v. *Sigle* (1906), 73 N. J. Law 419, 63 Atl. 865. To the same effect, see *Bostick* v. *Brower* (1898), 49 N. Y. Supp. 1046, 22 Misc. Rep. 709; *Maschauer* v. *Downs* (1923), 289 Fed. 540, 32 A. L. R. 1461; *Catlin* v. *Martin, supra; Brown* v. *Mudgett* (1868), 40 Vt. 68; *Sturtevant* v. *Starin, supra; Johnson* v. *Coleman* (1915), 13 Ala. App. 520, 69 So. 318.

"Where there is a separation between husband and wife, the tradesman at his peril must ascertain whether circumstances exist which would warrant him in giving credit to her. He is to take notice that there is a separation, and it is no defense to say that he had no knowledge of the fact. Whether there was a separation without the fault of the husband be-

tween the husband and wife at the time the goods were furnished is the fact to be submitted to the jury." *Porter* v. *Bobb, supra.* If, however, the husband has made proper allowance for the wife he is not liable. *Kemp* v. *Downham* (1848), 5 Harr. (Del.) 417; *Malden Hospital* v. *Murdock* (1914), 218 Mass. 73, 105 N. E. 457; *Quinlan* v. *Westervelt* (1910), 120 N. Y. Supp. 879, 65 Misc. Rep. 547.

The pendency of divorce proceedings will not shield the husband from liability where no alimony has been allowed, and he has not made other proper provision for the wife's support. But, if alimony has been allowed, he will not be liable. *Bennett* v. *O'Fallon* (1828), 2 Mo. 69, 22 Am. Dec. 440; *Wise Memorial Hospital Assn.* v. *Peyton* (1915), 99 Nebr. 48, 154 N. W. 838; *Hare* v. *Gibson* (1876), 32 Ohio St. 33, 30 Am. Dec. 568.

If the separation is by consent with no provision for the support of the wife, and she has no means of support, the husband is liable. *Burkett* v. *Trowbridge* (1873), 61 Me. 251; *Mayhew* v. *Thayer* (1857), 8 Gray (Mass.) 172; *Lockwood* v. *Thomas* (1815), 12 Johns. (N. Y.) 248; *Cany* v. *Patton* (1831), 2 Ashm. (Pa.) 140. But when there is a separation, and the husband is paying for the wife's support, either as alimony under order of court or in accordance with an agreement between them, fixing such amount as adequate and satisfactory, the wife cannot pledge her husband's credit under the presumed authority of necessity. *McFerren* v. *Goldsmith-Stern Co.* (1921), 137 Md. 573, 113 Atl. 107, 18 A. L. R. 1125.

If the court in an action for divorce has allowed alimony, that fact must be taken into consideration, as either temporary or final payment of alimony, even if insufficient for the wife's maintenance, will discharge the husband from further liability

for her support. *Willson* v. *Smyth* (1831), 1 Barn. & Ad. 801. To the same effect, see *Simpson* v. *Dutcher* (1910), 123 N. Y. Supp. 340, where the wife was denied alimony. And one who sells to a wife who is living apart from her husband is chargeable with knowledge of the allotment of alimony, and this applies to alimony *pendente lite.* In such cases, when the husband has complied with the order of the court, he cannot be held for goods purchased by his wife on his credit. *Malden Hospital* v. *Murdock, supra; Wise Memorial Hospital Assn.* v. *Peyton, supra.* Persons dealing with a wife under such circumstances do so at their peril, and are chargeable with knowledge of the allotment and payment of the alimony, *Hare* v. *Gibson, supra.* For a well-considered case, see *Wanamaker* v. *Weaver* (1903), 176 N. Y. 75, 68 N. E. 135, 65 L. R. A. 529, 98 Am. St. 621. The instant case is not comparable to *Arnold* v. *Brandt* (1896), 16 Ind. App. 169, 43 N. E. 936, where the husband abandoned his wife, who was without adequate means of support.

And finally, in disposing of this case, we adopt the language of the court in *S. E. Olson Co.* v. *Youngquist* (1898), 72 Minn. 432, 75 N. W. 727, as quite applicable to the facts now under consideration. "There is no claim made and no evidence showing that the husband expressly authorized the purchase of these goods. Nor is there any evidence showing that the defendant's wife ever before this time purchased any goods of plaintiff upon her husband's credit. They were living apart, though he was furnishing her for the support of herself and children a considerable portion of his income, and there is no evidence showing that he ever refused or neglected to support his family in a suitable manner. It is the legal duty of a husband to support his wife and children, and do this according to his circumstances and condition in life. There is no pre-

sumption that defendant disregarded or disobeyed his legal obligation in this respect, and the burden of proving to the contrary rested on plaintiff, which it failed to do."

Judgment reversed.