Mary **BARTROM**, Appellant–Defendant,

v.

**ADJUSTMENT BUREAU, INC.,** Appellee–Plaintiff.

No. 02A04–9204–CV–107.

Court of Appeals of Indiana, Fourth District.

Oct. 20, 1992.

---

David J. Avery, Lebamoff Law Offices, Fort Wayne, for appellant-defendant.

Norman S. Snow, Paul O. Sauerteig, Snow & Sauerteig, Fort Wayne, for appellee-plaintiff.

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, Mary Bartrom ("Bartrom"), appeals from the denial of summary judgment for Bartrom and a grant of summary judgment entered in favor of Plaintiff–Appellee, Adjustment Bureau, Inc. ("Adjustment Bureau"). We reverse and remand, with instructions to grant Bartrom's motion for summary judgment.

### Issue

Whether Bartrom is liable for medical expenses incurred by her husband when the expenses were incurred after Bartrom filed a Petition for Dissolution of Marriage but before an entry of support pursuant to the dissolution was awarded.

### Facts and Procedural History

Adjustment Bureau brought an action against Bartrom for medical expenses incurred by her husband, Howard J. Bartrom ("decedent"), who died as a result of the injuries which led to the medical expenses. Adjustment Bureau exhausted all means of recovery against decedent's estate before pursuing Bartrom for the medical expenses. Decedent's assets were jointly held with Bartrom and transferred to her upon his death. Bartrom was also the named beneficiary on life insurance policies owned by Decedent.

Bartrom filed a Motion for Summary Judgment which contended that Bartrom was not personally liable for medical bills incurred by decedent. Adjustment Bureau then filed a Motion in Response to Defendant's Summary Judgment and Plaintiff's Motion for Summary Judgment. The trial court found that the assigned claim for $67,637.75, plus interest and court costs, represented the value of reasonable and necessary medical services provided to decedent from July 27 through August 25, 1989.

Bartrom and decedent had been married for ten (10) years when Bartrom filed for divorce. There were three minor children from the marital home. From the date Bartrom removed herself and the children from the marriage, June 24, 1989, until decedent's death, Bartrom and decedent did not cohabitate. Bartrom filed her Petition for Dissolution of the Marriage on July 19, 1989. No agreement had been reached or provisional order entered regarding child or spousal support.

During decedent's hospitalization, Bartrom did not visit him, nor did she participate in discussions which led to the termination of the life support medical systems and services provided by the hospital.

### Discussion

This is a case of first impression. We must decide whether Bartrom is liable for medical expenses incurred by her husband when the expenses were incurred after she filed a Petition for Dissolution of the Marriage, but no support order had been entered.

When reviewing a summary judgment, the standard on review is whether there was no genuine issue of material fact and whether the moving party was entitled to

judgment as a matter of law. *Ind.Rul.Tr. Proc,* Rule 56(c); *Farm Bureau Co-op v. Deseret Title Holding Corp.* (1987), Ind. App., 513 N.E.2d 193, 195, *reh. denied; Interstate Auction, Inc. v. Central Nat'l. Ins. Group, Inc.* (1983), Ind.App., 448 N.E.2d 1094, 1097.

This is an appropriate case for application of common law to arrive at a summary judgment. The beauty of common law is not that it is static but that it evolves to meet the needs of the case where there is no specific legislative guidance. There are no issues of material fact presented for resolution in this case. We begin by acknowledging the evolving nature of the common law rule that, in the absence of a support or maintenance decree pending a divorce action, a spouse is primarily liable for medical expenses incurred by the other spouse.

We do not approach the common law with disregard for *stare decisis,* nor do we follow it without critical consideration:

> Judicial devotion to the doctrine of *stare decisis* is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded. To do so is to envision the common law to be as immutable as the laws of the Medes and Persians, and thus render our system of jurisprudence forever impotent. The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs....

*Brooks v. Robinson* (1972), 259 Ind. 16, 22–23, 284 N.E.2d 794, 797 (J. Hunter).

Under the common law doctrine of necessaries, a husband was responsible for necessary goods and services furnished to his wife by third parties. This rule developed in an era when women were totally dependent on their husbands for support, and was utilized as a method of enforcing this obligation. Because the husband was the financial provider for the family, the doctrine arose from the husband's obligation to support his wife, and was a device intended primarily for the protection and benefit of the wife. Thus, a husband who failed to provide food, shelter, clothing and medical services was liable to the creditor who provided those necessaries to the wife. In exchange, the wife was legally obligated to provide domestic services, society, and consortium to her husband, but was not liable for his necessaries since she was legally incapable of incurring an independent obligation.[1]

Adjustment Bureau relies on *Allen v. Selig Dry Goods* (1929), 90 Ind.App. 290, 165 N.E. 338. In that case, the husband was held to be liable for the debts of his estranged wife despite the fact of pending divorce proceedings because a husband had

---

1. The husband's liability for debts contracted by his wife rested on notions of principal and agent. Thus, a married woman purchasing goods on credit was assumed to be acting as her husband's agent. Therefore, although the wife could not bind her husband without his express or implied consent, the very circumstances of marriage raised a presumption that he assented to his wife's contracts for necessaries.

Legal disabilities imposed on married women by the common law have been removed. However, despite the fact that many of the legal disabilities have now been removed, remnants of the necessaries doctrine have continued in most jurisdictions. A few jurisdictions continue to cling to the traditional doctrine making the husband solely liable for necessaries. *See, e.g., Shands Teaching Hospital and Clinics v. Smith* (1986), Fla., 497 So.2d 644. Other states have abolished the doctrine entirely. Under this approach, only the spouse who actually incurred the debt is liable for the necessaries. *See, e.g., Schilling v. Bedford County Hospital* (1983), 225 Va. 539, 303 S.E.2d 905; *Condore v. Prince George's County* (1981), 289 Md. 516, 425 A.2d 1011.

The remainder of the states have "modernized" the doctrine through several different approaches. Many states have applied the doctrine equally to both spouses, resulting in joint and several liability for the husband and wife. Thus, creditors in these jurisdictions may proceed against either spouse for necessary expenses, regardless of whether the non-debtor spouse knew or consented to the debt. *North Carolina Baptist Hospitals v. Harris* (1987), 319 N.C. 347, 354 S.E.2d 471. This approach has been criticized because it "would result in the immediate exposure of the property of one spouse for a debt incurred by the other spouse. A creditor would receive the same benefits as if both spouses had agreed to joint liability." *Jersey Shore Medical Center–Fitkin Hospital v. Estate of Baum* (1980), 84 N.J. 137, 417 A.2d 1003, 1009.

an obligation to support his wife when no alimony had been ordered and he had not made any other provisions for the support of his wife. The court held that had the husband been paying alimony, he would not have been liable for his estranged wife's bills. This case does not apply to Bartrom's situation for several reasons.

First, it is premised on the common law doctrine of necessities, which has been abrogated in Indiana, because "today's married woman is a different legal creature." *Memorial Hospital v. Hahaj* (1982), Ind. App., 430 N.E.2d 412, 414.[2] Second, as Bartrom correctly notes, under Indiana Support Guidelines, decedent would not have been entitled to receive spousal maintenance from Bartrom because her income was less than his.

This court modified the common law rule by placing primary liability on the purchasing spouse and secondary liability on the non-debtor spouse. *Aker v. Fort Wayne Urology* (1990), Ind.App., 562 N.E.2d 751, 752, *trans. denied; Memorial Hospital*, 430 N.E.2d 412. This new rule imposes liability on the non-debtor spouse for the purchases of the other, regardless of whether the non-debtor spouse knew of the purchases, promised to pay for them, or has the financial resources with which to pay the debt.

In *Memorial*, Diana Hahaj refused to pay a debt from medical services incurred on her own behalf while she was married. In characterizing marriage as a "financial partnership," we held that "marriage is a shared enterprise, a joint undertaking, that in many ways ... is akin to a partnership." *Id.* at 415–416 (citation omitted). The spouse who incurred the debt was held to be primarily liable and the resources of the marital relationship was secondarily liable. Adjustment Bureau would have us adapt our reasoning in *Memorial* to the case before us now.

Our motive in viewing the marriage as a financial partnership was to shelter the non-purchasing spouse: "marshalling the marital resources in (this) manner grants some protection to the spouse who has not expressly consented to the debt." *Id.* Certain facts distinguish Bartrom's situation from the defendant's in *Memorial*. First, unlike Hahaj, Bartrom did not incur the medical bills herself, nor did she consent to the medical bills and, in fact, expressly denied any fiscal responsibility for them. Bartrom, as the dependent spouse, would have been protected under the traditional necessities doctrine. Additionally, the facts indicate that there were no marital resources from which the debt could be paid. Bartrom received $8,000.00 in marital equity, which was offset by $33,700.00 in marital debt.[3] Thus, the hospital was unreasonable to assume that there were sufficient marital assets to pay for decedent's medical debts.

Bartrom argues that she should not be liable under a theory of abandonment. She relies on *Yale University School of Medicine v. Collier* (1988), 206 Conn. 31, 536 A.2d 588, which held that when one spouse was in default of his or her marital duties,

**2.** Indiana enacted the Married Woman's Act, which abolished all the legal disabilities of married women with respect to the making of contracts and also permitted women to own, sell, mortgage and convey real or personal property.

**3.** Adjustment Bureau argues that Bartrom, by inheriting Decedent's property and by receiving his life insurance proceeds, takes the benefits of marriage and avoids the responsibility. Decedent's property did not compensate Bartrom for the marital debts. That Bartrom was the beneficiary of Decedent's life insurance policy is not germane to the issue at hand because, in Indiana, life insurance proceeds are exempt from claims of creditors:

(c) All policies of life insurance upon the life of any person, which name as beneficiary, or

are bona fide assigned to, the spouse, children, or any relative dependent upon such person, or any creditor, shall be held, subject to change of beneficiary from time to time, if desired, for the benefit of such spouse, children, other relative or creditor, free and clear from all claims of the creditors of such insured person or of the person's spouse; and the proceeds or avails of all such life insurance shall be exempt from all liabilities from any debt of such insured person or of the person's spouse.

I.C. 27–1–12–14. Bartrom's status as beneficiary stands independent of the marriage. Any person could have been named beneficiary of the policy.

the obligations of the other spouse were considered suspended. She supports her premise with *Cole v. Adams* (1982), 56 N.C.App. 714, 289 S.E.2d 918 and *Holiday Hospital Assoc. v. Schwarz* (1964), Fla. App., 166 So.2d 493, cases which held husbands liable for the debts of their wives when the wives left the husbands due to their misconduct. However, the Indiana legislature provided no-fault divorce for several valid policy reasons. These same policy reasons should be applied in this case. We will not indict the dead with an offense of abandonment.

Notwithstanding such, Bartrom argues that she should not be liable for her husband's necessities under the common law rule because she had filed a Petition for Dissolution of Marriage. She argues the filing of a Petition for Dissolution should be the gravamen in determining whether a spouse should be responsible for an estranged spouse's medical bills when the spouse who is sought to be financially responsible would not have been obligated to pay spousal maintenance to the other spouse. We agree. Had Mr. Bartrom died after an order of support and/or maintenance was awarded, his wife would not be before this court today. His untimely death is not a cause for applying a rule contrary to its purpose.

Adjustment Bureau argues that the imposition of liability should be based upon marital status alone, quoting *Memorial,* 430 N.E.2d at 416 (citation omitted). Such a blanket application has never been stated by this court. The concurring opinion in *Aker,* 562 N.E.2d at 752, proposed an exception to the liability of a spouse for necessaries of the other spouse "in situations where one spouse incurs expenses or debts without the other spouse's knowledge, and where one spouse makes misrepresentations about it to the other." It has been the position of our courts for well over one hundred years that a spouse is not bound by the acts and declarations of the other spouse unless he or she had knowledge of them. *Ewing v. Gray,* (1859), 12 Ind. 64. Adjustment Bureau correctly notes that because Bartrom had knowledge of the medical expenses as they were being incurred, that she would not come under the proposed *Aker* exception.

The central issue is whether a marriage, as a financial partnership, exists after one spouse petitions to end the partnership. We have held that "marriage, or co-tenancy, alone will not create an implied agency relationship." *Downham v. Wagner* (1980), Ind.App., 408 N.E.2d 606. The marriage relationship is but one factor in determining the question of agency. *Id.* It is legal fiction to bind one spouse for the acts and debts of another spouse under a theory of partnership or agency when, in reality, the exact opposite relationship existed. Divorce more often than not produces an inhospitable relationship between the spouses. In Bartrom's case, her husband had perpetrated violence on the family home after she filed for dissolution of the marriage. There can be no doubt that the Bartroms lacked an agency relationship.

Bartrom relies on *National Account Systems v. Mercado* (1984), 196 N.J.Super. 133, 481 A.2d 835, which held that, in some circumstances, a marriage will cease to exist for purposes of liability of one spouse for the necessities furnished to another even though the parties are legally married. In that case, the husband and wife were separated for four years, but the marriage was not legally dissolved. The husband was then hospitalized and died. The issue was whether the marriage between the parties in fact existed. It was determined that there was no financial unit between the couple at the time the medical bills were incurred and that it was unreasonable for the hospital to believe that the wife would be responsible:

> Our result is consistent with that reached by statute and case law in similar situations. For purposes of equitable distribution, the filing date of a divorce complaint ordinarily fixes the time of termination of the marriage though in some circumstances an earlier time may be used. (citation omitted) Accordingly, in all equitable distribution cases, the date used to identify the assets will be before the entry of a judgment for divorce and

thus will be a time when the marriage has not been legally dissolved.

*Id.,* 481 A.2d at 838.

Adjustment Bureau argues that *Mercado* does not apply to Bartrom's situation because the parties in *Mercado* had been separated for four years and that the Bartroms had only been separated for one month and the Petition for Dissolution of Marriage had only been filed one week before decedent's accident. The length of separation is not relevant to the central issue, and that is whether there was a financial partnership and agency relationship between the Bartroms at the time the medical expenses were incurred. There was no such relationship between the Bartroms.

Adjustment Bureau argues against the application of *Mercado* because Indiana law requires a waiting period of sixty days after the filing of a Petition for Dissolution of Marriage before a Decree of Dissolution can be granted. Adjustment Bureau argues that only the date of the Final Dissolution Decree should serve as the cutoff for spousal liability. We cannot agree. As the court in *Mercado* reasoned, the date for equitable distribution is the determining factor in spousal liability. Indiana law clearly states that equitable distribution takes place at the date of final separation:

> (b) In an action pursuant to section 3(a) of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts in a just and reasonable manner.

I.C. 31–1–11.5–11(b). Equitable distribution in Indiana applies to property or *debts* incurred after a final separation. *White v. White* (1981), Ind.App., 425 N.E.2d 726.

Adjustment Bureau is incorrect when they argue that a final separation does not occur until a Final Dissolution Decree has been issued. Indiana law is very clear on the matter:

> (a) For purposes of this section, "final separation" means the date of filing of

the petition for dissolution of marriage under section 3 of this chapter.

I.C. 31–1–11.5–11(a). In determining equitable distribution, the court is not bound to use the date of the final separation. The court has broad discretion in determining when the "marital pot" exists for purposes of division. *Hunter v. Hunter* (1986), Ind. App., 498 N.E.2d 1278, 1295. Conceivably, the trial court could have established the date of separation, June 24, and not the date of the filing for Dissolution, July 19, as their date for equitable distribution. It is clearly not the law in Indiana that the date of equitable distribution occurs only on the date the Final Dissolution Decree has been issued.

We hold that unless a dissolution court otherwise orders, one spouse is not liable for the debts of another spouse when a Petition for Dissolution of Marriage has been filed and, but for the untimely death or incapacity of the spouse who incurred the debt, that spouse would have been responsible for the support and maintenance of the other spouse and children. Because the debt was incurred by decedent after the date of final separation, it will not be apportioned to Bartrom.

Reverse and Remand, with instructions to Grant Bartrom's Motion for Summary Judgment.

CONOVER, J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

According to IND.CODE § 31–1–11.5–2(b), the termination of a marriage and restoration of the parties to the state of unmarried persons occurs when a court enters a dissolution decree. Here, a dissolution petition had been filed, but a dissolution decree had not yet been entered; therefore, the parties were still married. As the majority notes, current Indiana law places primary liability for medical expenses on the spouse incurring the expenses and secondary liability on the property of the marital relationship. *Aker v. Fort Wayne Urology Corp.* (1990), Ind.

App., 562 N.E.2d 751, 752; *Memorial Hospital v. Hahaj* (1982), Ind.App., 430 N.E.2d 412, 416. Accordingly, when Bartrom's husband died and the jointly-held assets transferred to Bartrom, she became secondarily liable for the incurred medical debt of her deceased husband. *See Aker* at 752. Although such a result seems harsh in light of the facts of this case, the potential for abuse with the majority's holding is too great to ignore.

I would grant summary judgment in favor of Adjustment Bureau, Inc.