**MEMORIAL HOSPITAL,**
**Appellant-Plaintiff,**

v.

**Diana Leslie HAHAJ,**
**Appellee-Defendant.**

**No. 3–581A141.**

Court of Appeals of Indiana,
Third District.

Jan. 28, 1982.

Susan M. Yoder, Krisor & Associates, South Bend, for appellant-plaintiff.

STATON, Judge.

Memorial Hospital brought this action against Diana Leslie Hahaj to recover $52.50 for medical services rendered. After the trial court heard the evidence regarding Memorial Hospital's claim for medical services rendered, it made the following finding:

"After hearing the Corut [sic] now finds: that the account sued upon is for medical services rendered to the defendant, there known as Diana Leslie; that such services were necessary and the charged [sic] reasonable; that at the time the defendant was legally married to one Floyd Leslie and was residing and cohabiting with him; that as a matter of law the defendant, as a married woman was not legally liable in her individual capacity for such services."

The judgment rendered for Diana Leslie and against Memorial Hospital is brought to this Court on appeal for a review of the finding of the trial court. After a review of the above finding, we reverse the judgment of the trial court.

The anachronistic issue raised by this appeal is analogous to the current status of the black bear in Indiana. Although once a viable and life-influencing force in our society, it is today merely of historical interest, existing only in museums, works of history, and active imaginations. The issue raised is whether a married woman is liable for the medical expenses she incurs in her own behalf.

This appeal arises out of those by-gone days of yesteryear when men were men and women were *non sui juris*.[1] In *Henneger v. Lomas* (1896), 145 Ind. 287, 44 N.E. 462, the Indiana Supreme Court explained the status of married women in the "good old days."

"At common law a valid marriage made the husband and wife one person in law. The legal existence of the woman was suspended or merged in that of the husband . . .

"The husband, by virtue of the marriage, was entitled to all the personal property and choses in action of his wife, which, when reduced to possession, becomes his absolute property, and was also entitled to the exclusive possession, use, and control of her real estate during their joint lives. The marriage extinguished all debts and causes of action for ante-nuptial wrongs between the parties . . .

"They could not sue one another, nor did any cause of action arise in favor of either by reason of any injury to the person or character committed by the other."

\*　　\*　　\*　　\*　　\*　　\*

"The husband was liable for his wife's ante-nuptial torts and contracts, and also for her torts committed during coverture,

---

1. One commentator noted:

"It is hardly necessary to point out that during the past century or so revolutionary changes in the legal status of women—particularly married women—have occurred, culminating in legislation whereby they have been relieved of almost all the disabilities which they once suffered (or enjoyed). Until these changes were wrought a married woman was not sui juris; i.e., like an infant or imbecile she had no legally recognized personalty for most purposes but stood somewhat in the position of a ward who was represented in matters by her guardian husband. . . ." Cribbet, Fritz & Johnson, *Property*, p. 1390 (1972).

including those committed out of his presence and without his directions . . .

"For choses in action accruing to the wife during coverture, the husband could sue alone, but for her ante-nuptial choses he was required to join his wife as a co-plaintiff in the suit . . .

"For injuries to the person or character of the wife, whether committed before or after the marriage, she could bring no action for redress without her husband's concurrence. Such action could only be brought in the name of both for her injuries, and the damages recovered were the property of the husband, and not of the wife . . .

"Any settlement made or discharge given by the husband in such case bound the wife. . . ."

*Id.* at 288–90, 44 N.E. at 463.

But today's married woman is a different legal creature. Indiana is starting its second century since the Married Woman's Act was first adopted in 1879.[2] That Act was substantially re-enacted in 1923,[3] and by the end of the Roaring Twenties the married woman's nonliability for contractual obligations—like flappers, bath tub gin, and "23-skidoo"—was set by the wayside of time's progressive road.[4]

The above cited Married Woman's Act is substantially intact and may be found under *Marriage: Rights and Liabilities Incident to Marriage Relation,* Ind.Code §§ 31–1–9–1 to –14 (1976 & Supp.1981). In pertinent part these statutes provide:

"All the legal disabilities of married women to make contracts are hereby abolished, except as herein otherwise provided."

*Id.* at –1.

"A married woman may take, acquire and hold property, real or personal, by conveyance, gift, devise or descent, or by purchase with her separate means or money; and the same, together with all the rents, issues, income and profit thereof, shall be and remain her own separate property, and under her own control, the same as if she were unmarried. And she may, in her own name, as if she were unmarried, at any time during the coverture, sell, barter, exchange, mortgage, lease, contract to sell, convey, or execute any instrument, contract, or commitment of any kind whatsoever affecting or in relation to her property, real or personal."

*Id.* at –2.

"Married women, without reference to their age, shall be liable for torts committed by them, and an action may be prosecuted against them for torts committed, as if unmarried. Husbands shall not be liable for the contracts or the torts of their wives."

*Id.* at –4.

Indiana's married woman may now freely contract, own, sell, mortgage and convey real or personal property. She may also commit torts and breach contracts and be held individually liable. There are still shackles to the married woman's status as represented by some legal throwbacks to those by-gone days.

Even after such acts as the Married Woman's Act were adopted by most jurisdictions, the common law rule that a husband is liable for his wife's "necessaries," including her medical expenses, has continued. *See, e. g., Mount v. Baptist of Gadsen, Inc.* (1966), 43 Ala.App. 423, 191 So.2d 262 (husband "prima facie" has duty to furnish wife necessaries including medical and hospital treatment); *Memorial Hospital of Alamance County v. Brown* (1981), 50 N.C.App. 526, 274 S.E.2d 277 (husband is liable for the costs of wife's necessary medical care); *Matter of Estate Stromsted v. St. Michael Hospital of Franciscan Sisters* (1980), 99 Wis.2d 136, 299 N.W.2d 226 (husband is

---

**2.** 1879, Indiana Acts, 160–61.

**3.** 1923, Indiana Acts, Chapter 63.

**4.** The married woman's ascent in society has been likened to "first a beast of burden, then a domestic animal, then a slave, then a servant, and then a minor. . . ." *Third National Bank v. Poe* (1908), 5 Ga.App. 113, 117, 62 S.E. 826, 828. Today, the married woman has nearly reached full maturity in legal status.

primarily liable for wife's medical expenses and wife is secondarily liable).

Appellant and the trial court agree the above stated common law is the general rule in Indiana, *citing Hickey v. Shoemaker* (1960), 132 Ind.App. 136, 167 N.E.2d 487, *and City of Terre Haute v. Pigg* (1940), 108 Ind.App. 68, 27 N.E.2d 137. Representatively, the Court in *Pigg* (male chauvinist?) stated:

> "Of course, the appellant is correct in its contention that a husband is primarily legally bound to pay the doctor and medical bills for the treatment of his wife...."

108 Ind.App. at 73, 27 N.E.2d at 137. Although the above cited cases addressed the admissibility of evidence regarding medical bills of the wife, rather than the primary liability for those bills, the above quoted statement can not be said to be an inaccurate statement of the existing common law in Indiana.[5]

Many jurisdictions today recognize the modern marital relationship as a financial partnership. Under such partnership, the individual is liable for his or her medical expenses with the other partner (spouse) and the marital property secondarily liable. Some states have adopted this position by statute, *see, e.g.*, Connecticut General Statutes, § 46b–37 (1981); Iowa Code Annotated § 597.14 (1950), while others by judicial decree.[6] *See, e.g., Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum* (1980), 84 N.J. 137, 417 A.2d 1003; *Pearson v. Cobey* (1975), 84 Misc.2d 479, 376 N.Y. S.2d 406.

Our own Supreme Court has recognized the changing role of the married woman and the marital relationship. In *Troue v. Marker* (1969), 253 Ind. 284, 252 N.E.2d 800, after citing Blackstone's Commentaries on the common law and the status of married women thereunder, the Court stated:

> "Of course, the law and times of which Blackstone spoke have changed. That was before the days when women were given the right to vote, to make contracts and own their separate property, and before the legislation generally known as the Married Womens' Act... Since that time the unity concept of marriage has in a large part given way to the partner concept whereby a married woman stands as an equal to her husband in the eyes of the law. There is, therefore, reason in some instances to say that the doctrine of stare decisis is not an iron mold which can never be changed..."

\*　　\*　　\*　　\*　　\*　　\*

> "The common law must keep pace with changes in our society, and in our opinion the change in the legal and social status of women in our society forces us to recognize a change in the doctrine with which we are concerned in this opinion." (citations omitted)

*Id.* at 290, 252 N.E.2d at 804.

In *Troue*, the Court found the common law adaptable to the changing role of the married woman and the marital relationship. The Court therefore held that a wife could recover for loss of consortium of her

---

5. *See also, City of Columbus v. Strassner* (1894), 138 Ind. 301, 34 N.E. 5, *reh. den.*, 138 Ind. 305, 37 N.E. 719.

6. The legislature of Minnesota has provided:
   "No married woman shall be liable for any debts of her husband, nor shall any married man be liable for any torts, debts, or contracts of his wife, committed or entered into either before or during coverture, *except for necessaries furnished to his wife* after marriage, where he would be liable at common law. Where husband and wife are living together, they shall be jointly and severally liable for all necessary household articles and supplies furnished to and used by the family." (emphasis added)

Minn.St. 519.05. The Minnesota Supreme Court, however, has held under this very statute:
   "We hold that the statute does not relieve the wife of liability to pay for her necessities, but vests a secondary liability in her husband. Since modern law now permits both husband and wife to legally contract, we hold that she, as well as her husband or any other adult, may contract and be primarily responsible for any legal obligation resulting from that contract. The statute creates an obligation in the husband to pay in case of default by the wife."
*Busch v. Busch Const., Inc.* (1977), Minn., 262 N.W.2d 377, 402.

husband, a right theretofore denied the married woman. And again, recognizing the changing role of the married woman and the marital relationship, the Court found the common law adaptable and abrogated interspousal immunity in *Brooks v. Robinson* (1972), 259 Ind. 16, 284 N.E.2d 794. Therein Justice Hunter noted:

"Judicial devotion to the doctrine of *stare decisis* is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded. To do so is to envision the common law to be as immutable as the laws of the Medes and Persians, and thus render our system of jurisprudence forever impotent. The strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs...."

*Id.* at 22–23, 284 N.E.2d at 797.

We think the present case requires this Court's continued recognition of the current status of married women and the marital relationship. We therefore set down the following rule: The spouse incurring the medical expenses, whether husband or wife, is primarily liable for those expenses. If the property of that spouse should prove insufficient, then the financial resources of the marital relationship is secondarily liable for those expenses.[7]

In adopting the same rule, the New Jersey Supreme Court made the following analysis:

"The appropriate result concerning the liability for necessaries follows from our view that 'marriage is a shared enterprise, a joint undertaking, that in many ways ... is akin to a partnership.' ... We hold that both spouses are liable for the necessary expenses incurred by either spouse. In a viable marriage, the marital partners can decide between themselves how to pay their debts. A creditor pro-

viding necessaries to one spouse can assume that the financial resources of both spouses are available for payment. However, in the absence of an agreement, the income and property of one spouse should not be exposed to satisfy a debt incurred by the other spouse unless the assets of the spouse who incurred the debt are insufficient.

"Normally a person is not liable for the debt of another in the absence of an agreement. The imposition of liability based on marital status alone is an exception to that rule. Nonetheless, it is a justifiable exception. The reasonable expectations of marital partners are that their income and assets are held for the benefit of the marital partnership and, incidentally, for creditors who provide necessaries for either spouse. However, it would be unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses. In the absence of such an agreement, a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient. Marshalling the marital resources in that manner grants some protection to a spouse who has not expressly consented to that debt." (citations omitted)

*Jersey Shore Medical Center-Fitkin Hospital, supra,* 84 N.J. at 151, 417 A.2d at 1010. We are in complete agreement with that analysis and the rule adopted therein.

The trial court's judgment is therefore vacated and this cause remanded for further proceedings consistent with this opinion.

GARRARD, J., concurs in result.

HOFFMAN, P. J., concurs in result with opinion.

---

7. This rule comports with Ind.Rules of Procedure, Trial Rule 17(D), which provides:

"For the purposes of suing or being sued there shall be no distinction between men and women or between men and women because of marital ... status ...."

Thus, substantively and procedurally, the law in Indiana will allow the married woman to be sued individually.

HOFFMAN, Presiding Judge, concurring in result.

I concur in the reversal of this cause. However, I rely solely on the case of *Scott Co. Sch. Dist. v. Asher* (1975), 263 Ind. 47, 324 N.E.2d 496.

That case involved the parent-child relationship instead of husband and wife. However, the reasoning used by Justice De-Bruler is equally applicable in this case.