**Patt HULSE, Individually, and Patt Hulse as Guardian of the Estate of Eula Mae Warren, an Incompetent Person, Plaintiffs–Appellants,**

v.

**O.T. WARREN, Defendant–Respondent.**

No. 16094.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 1989.

C.R. Rhoades, Rhoades, Paul & Paul, Neosho, for plaintiffs-appellants.

Walter Walker, Neosho, for defendant-respondent.

PREWITT, Presiding Judge.

In a two count petition Patt Hulse sought, as an individual and as guardian of Eula Mae Warren, to recover certain sums from defendant. Defendant counter-

claimed in four counts. Following nonjury trial judgment was entered for defendant on plaintiffs' claim and for plaintiffs on two counts of the counterclaim. One count had previously been dismissed. Plaintiffs appeal, raising issues only in regard to claims made in the petition.

We are met initially with whether the order entered by the trial court following trial was a judgment from which an appeal may be taken. Generally a judgment must dispose of all the parties and all the issues in the case. *Alliett & Williams v. Tri-City Construction Co.*, 694 S.W.2d 287, 288 (Mo.App.1985).

It is, of course, preferable for the judgment to expressly rule each count of the claims presented. However, where a disposition of one issue necessarily constitutes a ruling on another, a judgment can be final although the count necessarily ruled is not expressly decided. *Alliett*, supra 694 S.W.2d at 288; *Highland Inns Corp. v. American Landmark Corp.*, 650 S.W.2d 667, 669 n. 1 (Mo.App.1983); *Staples v. Dent*, 220 S.W.2d 791, 792 (Mo.App.1949).

The counterclaim was in four counts and express rulings denied the first three counts. Count III contended that Patt Hulse converted money in which defendant had an interest, and Count IV asked for an accounting of that money. By denying defendant recovery on Count III the court determined that defendant had no interest in the money referred to in Counts III and IV, so the trial court necessarily determined that defendant would not be entitled to an accounting of it. As all issues were expressly or necessarily determined, a judgment was rendered and the appeal lies.

We turn now to the merits. Patt Hulse is the daughter of Eula Mae Warren. Defendant is Eula Mae Warren's husband. Individually Hulse sought reimbursement for "necessaries" she furnished Eula Mae Warren. As guardian of Eula Mae Warren, Hulse sought reimbursement of the guardianship estate for funds it expended "for the care, treatment and living expenses of Eula Mae Warren". The parties treat both counts of the petition as being for "necessaries" so we do also.

The count of the petition brought by Hulse individually is based upon the rule that a person who directly supplies necessaries to a married woman is entitled to be compensated from her husband who fails to do so, unless she is living apart from him, without his fault. See *Attebery v. Attebery*, 507 S.W.2d 87, 90–91 (Mo.App. 1974); *Pfenninger v. Brevard*, 129 S.W.2d 924, 925 (Mo.App.1939).

The count brought as guardian of Mrs. Warren's estate is based on the theory that where a husband fails to support a wife and she provides herself with necessaries, she is entitled to reimbursement from her husband. See *Attebery*, 507 S.W.2d at 89. See also *Swanson v. Swanson*, 464 S.W.2d 225, 229 (Mo.1971). Generally, on the questions presented and related discussion see Annotation, Modern status of rule that husband is primarily or solely liable for necessaries furnished wife, 20 A.L.R.4th 196 (1983); Annotation, Husband's liability to third person for necessaries furnished to wife separated from him, 60 A.L.R.2d 7 (1958); Annotation, Duty of husband to provide necessaries for wife as affected by her possession of independent means, 18 A.L.R. 1131 (1922).

Mrs. Warren and defendant were married in 1975. Following the marriage they lived in a home they owned in Neosho. At the time of trial (November 7, 1988) she was 75 years of age and defendant 83. They had previously been married to others and both had adult children. In December of 1984 Mrs. Warren suffered a cerebral hemorrhage. At that time Mrs. Warren and Patt Hulse held approximately $90,000 to $100,000 in certificates of deposit in their joint names. This represented money which had belonged solely to Mrs. Warren before she put it in her and her daughter's name. There was evidence that Mrs. Warren referred to it as "my money".

Following Mrs. Warren's cerebral hemorrhage she went to a hospital in Neosho and was later transferred to a hospital in Springfield. She subsequently was placed in a rehabilitative institution in Neosho, and in February of 1985 she returned to the home she occupied with defendant.

There Mrs. Hulse and defendant attempted to care for her but after one week found they were not able to do so. Mrs. Hulse and defendant then agreed to move Mrs. Warren to a nursing home in Neosho and established a joint account for her expenses.

There was evidence from defendant that on the day Mrs. Warren was going to the nursing home in Neosho, she told Hulse and defendant, "Use my money, don't use O.T.'s money. If something like this happens to him, he'll need his money." Defendant testified that Mrs. Warren was "lucid" at that time and knew "what she was talking about". Neither party mentions this evidence in their briefs nor did they appear to treat it as significant at trial.

Mrs. Hulse later moved Mrs. Warren to a nursing home in McAlester, Oklahoma because it was closer to her home; Hulse lived in McAlester; and the cost was less there than in the nursing home in Neosho. Mrs. Hulse testified that the move was by agreement with defendant. Defendant denied that he agreed and testified that he did not know where his wife was for nine days after the move until he received a letter from Hulse's attorney to his attorney. Hulse was appointed guardian of the person and estate of Mrs. Warren by the District Court of Pittsburg County, Oklahoma in October of 1986. The evidence conflicted as to whether Mrs. Warren was incompetent from the date of her cerebral hemorrhage or became so after she was moved to McAlester.

Since she was moved to McAlester, Mrs. Warren had been supported by the funds that had been represented by the certificates of deposit. Hulse presented evidence that $55,407.29 had been expended for Mrs. Warren's care and that defendant had not paid any of Mrs. Warren's expenses since she left Neosho.

Although not making findings of fact, in a letter to counsel prior to judgment being entered on December 6, 1988, the trial court found that defendant had "adequately provided" for Mrs. Warren through the time she was at the nursing home in Neosho, that taking her to McAlester was without the consent of the defendant, and determined that he was not liable for the funds expended there. Except for comments contained in that letter, the trial court made no findings of fact. Therefore, all remaining fact issues are considered here as having been found in accordance with the result reached. Rule 73.01(a)(2).

This is not a situation where Mrs. Warren is "separated" from her husband as that word is generally used in the matrimonial sense. "Separation" in matrimonial law means a "cessation of cohabitation of husband and wife by mutual agreement". Black's Law Dictionary 1225 (5th ed. 1979). See also 41 Am.Jur.2d Husband and Wife § 338, p. 280 ("insane wife cannot be considered to be wrongfully leaving or abandoning her husband"). The "separation" was not voluntary, but necessitated by Mrs. Warren requiring extensive and constant care which defendant, at least partly due to his age and physical condition, was unable to provide. The decision here then has no relevance to the obligation to provide necessaries or other support where the parties are living apart by the voluntary act of one or more of them. Nor is it relevant to dissolution actions.

At common law the property of a woman vested in her husband upon their marriage; thereafter it was his duty to provide her necessary expenses and she had a corresponding duty to provide domestic services. *North Carolina Baptist Hospitals v. Harris*, 319 N.C. 347, 354 S.E.2d 471, 472 (1987). The marriage made the husband and wife one person and the legal existence of the woman was suspended or merged into that of the husband. *Memorial Hospital v. Hahaj*, 430 N.E.2d 412, 413 (Ind. App.1982).

The husband's obligation of support was not changed by "married women's acts" which Missouri and other states have adopted. *Pfenninger*, supra, 129 S.W.2d at 925; *Harris*, 354 S.E.2d at 473. However, today there is a tendency toward treating marriage as a financial partnership with each party equal to the other. *Hahaj*, 430 N.E.2d at 415. This reflects the trend in the law toward "gender neutrality". See *Harris*, 354 S.E.2d at 474.

**322**

A commentator has stated regarding the modern doctrine of necessaries:

> Now that the duty of support has, under the federal and state constitutions, been held to rest equally upon husband and wife, the common law doctrine of necessaries also applies to both spouses, according to their respective means and ability to perform the duty. This change in the law makes obsolete, or at least open to different interpretation, much of the language in the cases which deal with the doctrine of necessaries.

\*       \*       \*       \*       \*       \*

> The cases are not in agreement on whether the wife's possession of independent means sufficient to support herself excuses the husband from his obligation to furnish necessaries. In this day of equality between the sexes, there seems no good reason why the husband should be required to provide necessaries for his wife when she is able to pay for them herself.

1 Clark, The Law of Domestic Relations in the United States § 7.3 at 444, 448 (2d Ed.1987).

We know that generally there is a disparity between the earning capacity of men and women. Working men usually earn more than working women. We also recognize that when a wife is employed it is likely that she performs more of the domestic and child raising duties than does the husband. Despite the foregoing generalities, this should not prevent a deviation from the traditional common law approach regarding support obligation towards a gender neutrality approach.

 The doctrine of necessaries should apply to both spouses·but where the spouses have separate assets the spouse receiving the necessaries would have the primary responsibility or liability. When the claim is by others each spouse would have a secondary obligation for the necessaries of the other with the primary obligation on the party incurring the expense or for whose care it was incurred. Compare the result here with *Hahaj*, 430 N.E.2d at 416; *Jersey Shore Medical Center–Fitkin Hospital v. Estate of Baum*, 84 N.J. 137, 417 A.2d 1003, 1005 (1980); and *Harris*, 354 S.E.2d at 474–475.

Here, each party brought assets into the marriage; apparently there were only limited marital assets as their home was the only marital asset mentioned in evidence; each had children by a previous marriage; and, with the apparent knowledge and consent of the other, had arranged separate assets that would pass to their respective children upon their death. With these facts, we hold that Mrs. Warren's assets should first be used for her care and when those assets are exhausted then marital assets could be used or defendant would be liable for her support. There was evidence that Mrs. Warren has been supported by her separate assets. Thus far those funds have been adequate to maintain her so defendant has no obligation for her support.

Although our treatment of the issues is different than that of the trial court, we reach the same result. It is not necessary that we agree with the trial court's basis for the judgment in order to affirm it. If the judgment is properly sustainable on other grounds, the judgment must be affirmed. *Sinclair v. State*, 708 S.W.2d 333, 336 (Mo.App.1986).

The judgment is affirmed.

HOGAN and MAUS, JJ., concur.