MEDICAL BUSINESS ASSOCIATES, INC., Respondent, v JANE STEINER et al., Appellants.

Second Department, October 19, 1992

## APPEARANCES OF COUNSEL

*Eric N. Aglow,* Elmsford, for appellants.

*Mead, Dore & Vout,* White Plains *(Elizabeth M. Hecht* of counsel), for respondent.

## OPINION OF THE COURT

EIBER, J.

The common law of this State has long required a husband to support his wife in conformity with his means, and to provide her with such "necessaries" as food, clothing, shelter, and medical care. Under the common-law doctrine of necessaries, a husband is thus liable to third parties who furnish his wife with goods or services which fall within the scope of the rule. On this appeal, we are asked to determine whether the common-law doctrine of necessaries violates the Equal Protection Clause because, while it makes a husband responsible for certain goods and services provided to his wife, it does not impose a similar obligation upon her. For the reasons which follow, we find that as traditionally formulated, the necessaries doctrine violates the Equal Protection Clause, and that its unconstitutionality should be remedied by extending the common-law rule to both spouses. We further hold that it is the spouse who received the necessary goods or services who should be primarily liable for payment. A creditor seeking to recover a debt against the nondebtor spouse retains the burden of demonstrating that necessaries were furnished on the nondebtor spouse's credit, and that the nondebtor spouse has the ability to satisfy the debt.

I

The record in the instant case is sparse, and the relevant facts can be briefly stated. The plaintiff, Medical Business Associates, Inc., is a domestic corporation which, through its agents and employees, allegedly provided medical treatment to Paul Steiner and his wife Jane over a six-year period. In March 1988 the plaintiff commenced the instant action against Paul Steiner seeking to recover the sum of $1,007.93 for medical services rendered to his wife from November 4, 1981 to September 25, 1987. Shortly after the commencement of the action, the plaintiff moved to amend its complaint to add Jane Steiner as a defendant, and to include a second cause of action demanding judgment against both defendants

in the sum of $5,343.38 for additional medical services allegedly provided directly to Paul Steiner. The proposed amended complaint essentially alleged that the plaintiff's employees had rendered medical services to Jane and Paul Steiner "[a]t the express or implied request of the defendants", and that, although an account had been stated between the parties, no portion of the balance due had been paid. By decision and order dated September 16, 1988, the Supreme Court granted the plaintiff's motion, concluding that the proposed amended complaint stated a cause of action against Paul Steiner for medical services rendered to his wife Jane because "[u]nder New York law, a husband is liable for reasonable medical services rendered to his wife".[1]

One year later, by notice of motion dated September 28, 1989, the plaintiff corporation moved for summary judgment against both defendants. In a supporting affirmation, the plaintiff's attorney summarized the procedural history of the litigation, and urged the court to hold Paul and Jane Steiner both jointly and individually liable for all medical services provided to them. Although the attorney acknowledged that at common law, a wife ordinarily would not be liable for medical services provided to her husband, he contended that, in view of recent decisions of the United States Supreme Court and statutory amendments equalizing support responsibilities between men and women in New York, the common-law obligation to furnish necessaries should be enforced against a wife in the same manner as it is enforced against a husband. The plaintiff's attorney urged that Jane Steiner was therefore under a duty to provide reasonable necessaries, including medical care, to her husband, and could raise no viable defense to this action. In support of summary judgment, the plaintiff also submitted the affidavits of two employees which indicated that a balance of $932.93 remained due for unspecified medical services rendered to Jane Steiner, and that a balance of $5,093.38 remained due for unspecified medical services rendered to Paul Steiner.

The defendants countered by requesting that summary judgment dismissing the complaint be granted in their favor. In opposition to the plaintiff's motion and in support of their cross application, the defendants relied primarily upon a

---

1. Although the court granted the plaintiff's motion to amend the complaint, it noted that all claims for services provided more than six years prior to the commencement of the action were time barred by the applicable Statute of Limitations.

memorandum of law prepared by their attorney, who contended that any constitutional inconsistency between the common-law doctrine of necessaries and New York's recently enacted gender-neutral support laws should be resolved by abolishing rather than expanding the necessaries doctrine. The defendants' attorney additionally pointed out that the plaintiff had failed to submit any proof with regard to the nature and extent of the services allegedly rendered, or documentary proof to establish the balance remaining for these services.

In a decision and order dated December 29, 1989, the Supreme Court (Miller, J.) denied both the plaintiff's motion and the defendants' cross application for summary judgment, but held that the necessaries doctrine should be expanded to impose liability upon wives for necessaries furnished to their husbands. In reaching its determination, the Supreme Court relied primarily upon the reasoning of the Appellate Division, Third Department, in *Our Lady of Lourdes Mem. Hosp. v Frey* (152 AD2d 73), which held that imposing a reciprocal duty upon each spouse to furnish the other with necessaries comported with the modern view that marriage is an economic partnership and was consistent with the policy underlying this State's gender-neutral support laws. The Supreme Court concluded that "so long as the necessaries doctrine exists, it must be extended to require reciprocal obligations of wives. It is only logical that the partnership be called upon to reimburse those third parties who have provided necessary services to one of the spouses". The court noted, however, that a trial was still required because the plaintiff had failed to submit proof concerning the nature and value of the services claimed, and because application of the necessaries doctrine requires proof that the services rendered to each spouse were furnished in reliance on the credit of the other spouse, as well as proof as to each spouse's financial status and ability to pay the bill for the other, if required.

On appeal from the denial of their cross application for summary judgment, Paul and Jane Steiner continue to maintain that the common-law doctrine of necessaries should be abolished because it is unconstitutional, and that neither the husband nor the wife should be held liable for medical expenses incurred by the other spouse. The plaintiff corporation agrees that the necessaries doctrine in its historical form is unconstitutional, but contends that the unconstitutionality of the common-law rule should be remedied by expanding it to

impose liability upon wives for necessaries provided to their husbands.

## II

At early common law, a husband and wife were regarded as one legal entity, and a married woman had no right to own property or to control her financial affairs (see, Bennett v Bennett, 116 NY 584, 591; North Carolina Baptist Hosps. v Harris, 319 NC 347, 354 SE2d 471; Condore v Prince George's County, 289 Md 516, 425 A2d 1011, 1013; Hulse v Warren, 777 SW2d 319, 321 [Mo]). Since the married woman was considered legally incapable of owning property and incurring debts independent of her husband, the common law recognized that the husband had a duty to support his wife and to provide for her necessary expenses (see, Cromwell v Benjamin, 41 Barb 558; Garlock v Garlock, 279 NY 337; North Carolina Baptist Hosps. v Harris, supra). In return for her husband's support, the wife had a corresponding duty to provide domestic services for the comfort, care, and well being of her family, and consortium to her husband (see, North Carolina Baptist Hosps. v Harris, supra; Hulse v Warren, supra; Schilling v Bedford County Mem. Hosp., 225 Va 539, 303 SE2d 905). A corollary of the husband's obligation of support was the common-law doctrine of necessaries, which imposed liability on the husband to third parties who provided essential goods and services, including medical care and treatment, to his wife and children (see, Cromwell v Benjamin, supra; Matter of Burt, 254 App Div 584; Our Lady of Lourdes Mem. Hosp. v Frey, supra; see generally, 47 NY Jur 2d, Domestic Relations, § 662). Because the basis of liability for expenses incurred by the wife was the husband's presumed failure to provide adequate support (see, Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum, 84 NJ 137, 417 A2d 1003, 1005), the necessaries doctrine served, in the words of one commentator, as a "protective remedy for the hapless wife and children facing economic abandonment by the husband" (Williams, The Doctrine of Necessaries: Contemporary Application as a Support Remedy, 19 Stetson L Rev 661 [1990]).

Although this allocation of marital rights and responsibilities developed during a period in history when married women were under legal disabilities which prevented them from managing their own financial affairs, the enactment across the Nation of "Married Women's Acts" which empow-

ered women to make contracts and transact business, did not relieve husbands from liability for necessaries purchased by their wives *(see,* General Obligations Law § 3-301; *Frank v Carter,* 219 NY 35; *Hulse v Warren, supra; Condore v Prince George's County, supra; Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum, supra).* The obligation of a husband to support his wife, which comported with the traditional family structure of the husband as sole breadwinner and the wife as full-time homemaker *(see, Our Lady of Lourdes Mem. Hosp. v Frey,* 152 AD2d 73, 74, *supra),* remained "one of the most primary and absolute principles in New York law" (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 412, at 33). As the New York Court of Appeals explained in *Garlock v Garlock (supra,* at 340) the husband's duty to support his wife and children in conformity with his means was deemed fundamental to the marital relationship and an integral part of the public policy of this State: "Marriage is frequently referred to as a contract entered into by the parties, but it is more than a contract; it is a relationship established according to law, with certain duties and responsibilities arising out of it which the law itself imposes. The marriage establishes a status which it is the policy of the State to maintain. Out of this relationship, and not by reason of any terms of the marriage contract, the duty rests upon the husband to support his wife and his family, not merely to keep them from the poorhouse, but to support them in accordance with his station and position in life".

## III

As the foregoing discussion indicates, the common-law necessaries doctrine retained its vitality into the twentieth century based upon the concept of the wife as the dependent spouse and caretaker of the family, and the husband as sole wage earner. It has been widely recognized, however, that the traditional common-law rule, whereby the husband was solely responsible for his family's necessities, is "an anachronism that no longer fits contemporary society" *(Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum, supra,* 84 NJ 137, 147, 417 A2d 1003, 1008; *Smith v Hernandez,* 794 P2d 772, 773 [Okla]). In modern America, "[n]o longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas" *(Stanton v Stanton,* 421 US 7, 14-15). Thus, in *Orr v Orr* (440 US 268, 279-280), the Supreme Court invalidated, on equal protection grounds,

an Alabama statute which required husbands, but not wives, to pay alimony upon divorce, declaring that "the 'old notio[n]' that 'generally it is the man's primary responsibility to provide a home and its essentials,' can no longer justify a statute that discriminates on the basis of gender". So, too, must the common law adapt to reflect the strides that women have taken towards economic independence, and to acknowledge that in today's society, marriage is a "partnership, with neither spouse necessarily dependent financially on the other" *(Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum, supra,* at 147, at 1008). In order to withstand scrutiny under the Equal Protection Clause, a common-law rule or statute which distributes benefits and burdens on the basis of gender " 'must serve important governmental objectives and must be substantially related to achievement of those objectives' " *(Califano v Webster,* 430 US 313, 317, quoting *Craig v Boren,* 429 US 190, 197; *Orr v Orr, supra).* Recognition of the changing role of married women and the marital relationship leads us to join those courts throughout the Nation which have concluded that the common-law necessaries rule, predicated as it is upon the assumption that husbands bear the sole responsibility of support for their families, cannot withstand scrutiny under the substantial relationship standard *(see, Orr v Orr, supra; St. Francis Regional Med. Ctr. v Bowles,* 251 Kan 334, 836 P2d 1123; *Schilling v Bedford County Mem. Hosp.,* 225 Va 539, 303 SE2d 905, *supra; Emanuel v McGriff,* 596 So 2d 578, 579 [Ala]; *Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum, supra).* We therefore find that as historically formulated, the necessaries doctrine violates the Equal Protection Clause.

## IV

Having concluded that the necessaries rule does not accord with the Equal Protection Clause, we turn next to the issue of whether the doctrine should be abolished in its entirety, as the defendants urge, or whether the doctrine should be expanded by applying it equally to husbands and wives, as the plaintiff contends. Abrogation of the doctrine was the remedy chosen by the Maryland Court of Appeals in *Condore v Prince George's County* (289 Md 516, 425 A2d 1011, *supra).* In *Condore,* Prince George's County sued a widow to recover the unpaid portion of her late husband's hospital bill. Although the *Condore* court acknowledged that expansion of the necessaries doctrine to impose liability upon wives would satisfy the

requirements of Maryland's Equal Rights Amendment, the court expressed concern that extension of the doctrine would also "create a cause of action against a wife where none has previously existed" *(Condore v Prince George's County,* 289 Md 516, 532, 425 A2d 1011, 1019, *supra).* Reluctant to judicially expand the common-law doctrine by imposing a new reciprocal liability upon the wife, the *Condore* court instead concluded that selection of the remedy which "best serves the societal need" was a matter of such fundamental policy that it should be determined by the Maryland Legislature *(Condore v Prince George's County,* 289 Md 516, 532, 425 A2d 1011, 1019, *supra).* Pending legislative action, the court declared that the necessaries doctrine was no longer part of Maryland's common law. Courts in Alabama and Arkansas have similarly concluded that the issue of extension of the necessaries doctrine to include a wife's reciprocal support duty is best left to the Legislature *(see, Emanuel v McGriff, supra; Medlock v Fort Smith Serv. Fin. Corp.,* 304 Ark 652, 803 SW2d 930).[2]

However, in most jurisdictions where the constitutionality of the necessaries doctrine has been considered, the courts have determined that it should be expanded to apply both to husbands and wives. In the leading case of *Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum* (84 NJ 137, 151, 417 A2d 1003, 1010, *supra),* the Supreme Court of New Jersey concluded that since " 'marriage is a shared enterprise, a joint undertaking, that in many ways * * * is akin to a partnership' ", both spouses should be liable for the necessary expenses incurred by either spouse. In reaching its decision to expand the necessaries doctrine to achieve "the mutual sharing of * * * obligations by husbands and wives", the court observed that "[i]n a viable marriage, the marital partners

---

2. In 1983, the Supreme Court of Virginia also concluded that the necessaries doctrine was unconstitutional and should be abolished *(see, Schilling v Bedford County Mem. Hosp.,* 225 Va 539, 303 SE2d 905, *supra).* Although the *Schilling* court acknowledged that courts in other jurisdictions had adopted the view that the necessaries doctrine should be extended to include wives rather than abolished, the court concluded that "this task, if advisable, is better left to the General Assembly" *(Schilling v Bedford County Mem. Hosp.,* 225 Va 539, 544, 303 SE2d 905, 908, *supra).* In response to the *Schilling* decision, the General Assembly subsequently amended Virginia Code Annotated § 55-37 to expressly provide that "[t]he doctrine of necessaries as it existed at common law shall apply equally to both spouses". Other States, including Connecticut and Illinois, have addressed the issue by enacting statutes which make both spouses jointly liable for family expenses, including reasonable and necessary medical care *(see,* Conn Gen Stat § 46b-37; Ill Ann Stat, ch 40, ¶ 1015).

can decide between themselves how to pay their debts" *(Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum,* 84 NJ 137, 148, 151, 417 A2d 1003, 1009, 1010, *supra).* Moreover, in *North Carolina Baptist Hosps. v Harris* (319 NC 347, 353, 354 SE2d 471, 474, *supra)* the Supreme Court of North Carolina also elected to expand the necessaries doctrine, reasoning that: "The doctrine has historically served several beneficial functions. Among these are the encouragement of health-care providers and facilities to provide needed medical attention to married persons and the recognition that the marriage involves shared wealth, expenses, rights, and duties. We conclude that the benefits to the institution of marriage will be enhanced by expanding rather than abolishing the doctrine of necessaries. Our decision is a recognition of a personal duty of each spouse to support the other, a duty arising from the marital relationship itself and carrying with it the corollary right to support from the other spouse." The necessaries doctrine has also been extended to impose liability on both spouses in the States of Indiana *(see, Memorial Hosp. v Hahaj,* 430 NE2d 412 [Ind]), South Carolina *(see, Richland Mem. Hosp. v Burton,* 282 SC 159, 318 SE2d 12), Michigan *(see, Borgess Med. Ctr. v Smith,* 149 Mich App 796, 386 NW2d 684; *but see, Bronson Methodist Hosp. v LaRoy,* 171 Mich App 729, 430 NW2d 817), Wisconsin *(see, Marshfield Clinic v Discher,* 105 Wis 2d 506, 314 NW2d 326; *Matter of Stromsted,* 99 Wis 2d 136, 299 NW2d 226), Missouri *(see, Hulse v Warren,* 777 SW2d 319, *supra),* and, most recently, Kansas *(see, St. Francis Regional Med. Ctr. v Bowles,* 251 Kan 334, 836 P2d 1123, *supra).*[3]

---

3. Florida, unlike all the other States which have addressed the constitutionality of the necessaries doctrine, has opted to retain the common-law rule unmodified. In *Shands Teaching Hosp. & Clinics v Smith* (497 So 2d 644), the Florida Supreme Court rejected the petitioner hospital's argument that a wife was responsible for medical services provided to her husband before his death, deferring modification of the common-law doctrine to the Legislature. While the *Shands* court agreed that it was an anachronism to hold the husband responsible for necessaries of the wife without imposing a reciprocal duty upon her, it concluded that the petitioner hospital had no standing to make an equal protection argument regarding the husband's unilateral duty of support under the common law. The court thus did not reach the issue of whether the common-law doctrine violated constitutional mandates. Although, as previously noted, several other States have similarly concluded that expansion of the necessaries doctrine is a question best left to the Legislature, only Florida has retained the common-law rule as historically formulated pending legislative review *(see,* Williams, *The Doctrine of Necessaries: Contemporary Application as a Support Remedy,* 19 Stetson L Rev 661, 666).

This State's highest court has not yet ruled on the constitutionality of the necessaries doctrine. In *Lichtman v Grossbard* (73 NY2d 792), in affirming a holding that the plaintiff, an operator of a nursing home which cared for the defendant's husband prior to his death, was not entitled to recover, the Court of Appeals declined to reach the plaintiff's constitutional challenge because it had been raised for the first time on appeal. The *Lichtman* court cautioned, however, that its affirmance should not be construed as a rejection of the view that the necessaries rule should be modified as a matter of common-law or constitutional principles. Although the *Lichtman* decision left the plaintiff's belated constitutional attack on the necessaries doctrine unresolved, the opinion did indicate that two members of the panel, Judge Titone and Judge Hancock, believed that the constitutional question was properly preserved, but disagreed on the proper approach to adopt. The opinion further noted that in Judge Titone's view, the necessaries doctrine should be abolished because its validity has been undermined by changing legal and social concepts, leaving little justification for its retention. In Judge Hancock's view, the doctrine should be extended to impose a reciprocal obligation on both spouses because that would reflect the modern view of marriage as an economic partnership, would be consistent with the policy underlying New York's current support laws, and would continue to encourage retail consumer creditors to supply nonworking spouses with credit.

More recently, in *Our Lady of Lourdes Mem. Hosp. v Frey* (152 AD2d 73, *supra*), the Appellate Division, Third Department, adopted Judge Hancock's view that the necessaries doctrine should be expanded to impose a reciprocal duty on both spouses. In reaching its decision, the court stressed that "great changes have been made in the status of the married woman" since the formation of the doctrine, and that expansion would comport with New York's gender-neutral support laws *(Our Lady of Lourdes Mem. Hosp. v Frey, supra,* at 75). We agree with the Third Department that the necessaries rule should be extended to impose a reciprocal duty upon the married couple for the necessary expenses incurred by either spouse. The necessaries doctrine originally evolved as a safeguard to ensure that the essential needs of a dependent wife and children were provided for, and at the heart of this common-law rule "is a concern for the support and the sustenance of the family and the individual members thereof" *(Sharpe Furniture v Buckstaff,* 99 Wis 2d 114, 117, 299 NW2d

219, 222). We are persuaded that retaining the common-law rule and applying it in a gender-neutral fashion would encourage the extension of credit to dependent spouses who, in an individual capacity, might lack the ability to purchase necessities or to obtain adequate medical care. The necessaries doctrine has historically facilitated support of the family, and expansion of the doctrine to require spouses to mutually share the obligation of furnishing necessaries is fully consistent with the relatively recent statutory amendments enacted by the Legislature in 1980, which make the duty of a wife to support her husband equal to that of a husband to support his wife, and the duty of a mother to support her children equal to the duty of the father to support his children (see, Domestic Relations Law § 32; Family Ct Act §§ 412, 413). Accordingly, the Supreme Court properly refused to dismiss the plaintiff's claims against each of the defendants for medical services rendered to the other.

## V

Although jurisdictions throughout the country have modified the necessaries doctrine to apply equally to both spouses, we are mindful that expansion of the common-law rule has been criticized because such an approach renders the husband and wife jointly and severally liable for the necessary expenses of either spouse. This joint and several approach to extending the doctrine of necessaries has been termed "equality with a vengeance" because it results in the exposure of the property of one spouse for a debt incurred by the other spouse, thereby affording a creditor the same benefits as if both spouses had agreed to liability (see, Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum, supra, at 149, at 1009; Condore v Prince George's County, supra, at 529, at 1017). Moreover, as one commentator has observed, "[t]his approach takes into account neither which spouse incurred the debt nor the financial resources of each spouse. The creditor can proceed directly against the nondebtor spouse, regardless of that spouse's financial situation * * * Because the joint and several approach does not consider whether one spouse needs support from the other, the doctrine of necessaries has been reduced to nothing more than a creditor's remedy" (Moxley, North Carolina Baptist Hospitals, Inc. v Harris: North Carolina Adopts a Gender-Neutral Approach to the Doctrine of Necessaries, 66 NC L Rev 1241, 1250-1251 [1988]).

Consequently, in several of the jurisdictions which have

elected to expand rather than to abolish the necessaries doctrine, the courts have attempted to afford some measure of protection to the property of the nondebtor spouse. For example, in *Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum (supra,* at 151, at 1010), the New Jersey Supreme Court found that it would be "unfair to accord the same rights to a creditor who provides necessaries on the basis of an agreement with one spouse as to a creditor who has an agreement with both spouses". The court thus concluded that "[i]n the absence of such an agreement, a creditor should have recourse to the property of both spouses only where the financial resources of the spouse who incurred the necessary expense are insufficient" *(Jersey Shore Med. Ctr.-Fitkin Hosp. v Estate of Baum, supra,* at 151, at 1010). Other States have also tempered application of the doctrine by placing primary liability upon the spouse who incurred the debt and secondary liability on the nondebtor spouse. Most recently, in *St. Francis Regional Med. Ctr. v Bowles (supra),* a hospital brought suit against a wife for medical services rendered to her husband. The Supreme Court of Kansas held that the doctrine of necessaries should be expanded to apply equally to husbands and wives, but further concluded that "before a creditor may seek payment from a spouse the creditor must first pursue collection from the person who received the necessary goods or services. Only if the spouse who received the benefits has insufficient resources to satisfy the debt may the other spouse be liable" (251 Kan 334, —, 836 P2d 1123, 1128, *supra).* We find that this approach, which has also been adopted in Indiana *(see, Memorial Hosp. v Hahaj, supra),* and in Missouri *(see, Hulse v Warren, supra)* best solves the dilemma of drawing a rule which treats the creditor fairly and yet provides some degree of protection to the nondebtor spouse *(see, Matter of Stromsted, supra,* at 146, at 231 [Abrahamson, J., dissenting]). We therefore hold that a spouse who has incurred a debt for necessary goods or medical treatment is primarily liable for that debt.

Before concluding our discussion, we emphasize that liability under the doctrine of necessaries has never been automatic, and that our extension of the rule to wives should not be construed as an elimination of the traditional restrictions on a spouse's liability which existed at common law. Accordingly, as the Appellate Division, Third Department, pointed out in *Our Lady of Lourdes Mem. Hosp. v Frey (supra)* a creditor seeking to recover for necessaries retains the burden

of demonstrating that necessaries were furnished on the non-debtor spouse's credit. Moreover, as at common law, the responsibility to pay for a spouse's debts must remain limited by the nondebtor spouse's ability to do so (see, Our Lady of Lourdes Mem. Hosp. v Frey, 183 AD2d 994). Resolution of these issues at bar must await a trial, at which evidence concerning each spouse's financial status and ability to pay the other spouse's medical bills can be considered.

MANGANO, P. J., HARWOOD and O'BRIEN, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.