G.B. v N.P. (2024 NY Slip Op 51655(U))

[*1]

G.B. v N.P.

2024 NY Slip Op 51655(U)

Decided on November 27, 2024

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 27, 2024
Supreme Court, New York County

G.B., Plaintiff,

against
N.P., Defendant.

Index No. XXXXX

Counsel for Plaintiff:
Krauss Shaknes Tallentire & Messeri LLP
350 Fifth Avenue, Ste 7620
New York, NY 10118
By: Heidi A. Tallentire, Esq. & Sydney Lim, Esq.
Counsel for Defendant: 
Chemtob Moss Forman & Beyda LLP
527 Madison Avenue, Floor 7
New York, NY 10022
By: Susan M. Moss, Esq. & Mudita Chawla, Esq. 
Counsel for the Child: 
Cardi & Edgar LLP
99 Madison Avenue, Floor 8
New York, NY 10016
By: Dawn M. Cardi, Esq.

Ariel D. Chesler, J.

The parties to this matrimonial action were married on or about August 1, 2015, in New Jersey. There was one child born of this marriage S.B. (hereinafter: the Child).
The Father initially moved by order to show cause seeking an order that sought, inter alia, various forms of relief as it relates to parenting time and legal fees. The Mother cross-moved for, inter alia, relief as to relates to parenting time, an award of temporary basic child support, a pro-rata split on add-ons and counsel fees. 
The parties have appeared numerous times on this motion sequence which has resulted in [*2]a expansion of the Father's parenting time by interim orders; the most recent of which provides for a "5/14" schedule with the Child. Further, based upon the discord present in the litigation the Court appointed Ms. Dawn Cardi, Esq. as the Attorney for the Child. The custodial and access concerns raised in the motion have now been resolved via interim orders or stipulations and are otherwise referred to trial.
 DISCUSSION
It is beyond dispute that the parties are both very fortunate. They both enjoy high-incomes and a privileged lifestyle. The parties' respective Net Worth Statements provide the Mother is employed in a sales position at a national bank and the Father as Hedge Fund Analyst.
I. Temporary Basic Child Support & Add-Ons
Under the current parenting time arrangement, the Mother is the de facto custodial parent and thus is entitled to an award of basic child support and add-ons. For the purposes of calculating temporary child support the Court may, but is not required to, follow the Child Support Standards Act (CSSA). (K.L. v J.B., 2023 NY Slip Op 51327[U], at *7-8 [Sup Ct, NY County 2023, Chesler, J.]; see DRL § 240[1-b][c]; Rubin v Salla, 78 AD3d 504, 505 [1st Dept 2010]["Courts considering applications for pendente lite child support may, in their discretion, apply the CSSA standards and guidelines, but they are not required to do so."]).
To arrive at the proper temporary award, the Court first turns to the CSSA. Under the CSSA, the first step to ascertaining the proper amount of child support is to "determine the combined parental income." (DRL § 240[1-b][c][1]). The CSSA defines income as, inter alia, "gross (total) income as should have been or should be reported in the most recent federal income tax return," investment income, or income received through other sources such as pensions and annuity payments. (Id.§ [b][5]). There is a strong public policy preference toward relying on the parties' incomes as reported on their tax returns (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 422 [2009]["We cannot, as a matter of policy, permit parties to assert positions in legal proceedings that are contrary to declarations made under the penalty of perjury on income tax returns."]). However, this rule is neither ironclad nor preclusive of this Court's discretionary power to impute income to a party based upon other sources of income not previously mentioned. (See DRL § 240[1-b][b][5][iv]; Spalter v Spalter, 224 AD3d 419, 421 [1st Dept 2024][Holding the Buntzman tax estoppel does not apply to "mixed questions of law and fact."]).
Here, the parties' 2022 joint Income Tax Return's Form 1040 represents a combined wages and salaries of $993,824.00. However, the parties' 2022 Form 8879 demonstrates the parties' "adjusted gross income" to be "$1,250,365.00." The parties' 2022 New York State IT-2 Summary of W-2 Statements demonstrate that the of the reported wages and salaries, the Mother earned $566,449.00 and the Father earned $427,375.00. Comparatively, the parties had an adjusted gross income of $5,259,855.00 in 2021. In these two years alone, it is clear that there is a character of volatility related to this family's income, making their tax returns less reliable and requiring this Court to exercise its discretion to look beyond merely what is reported to the IRS and State.
Outside of income, this Court may impute income based upon the parties' assets, fringe benefits, and/or payments received by third parties. (DRL § 240[1-b][b][5][iv]). The Court notes in the first instance that the Father's Net Worth Statement is incomplete. Nonetheless, the Father reports in excess of $13 million in assets. Further, the Father reports an estimated liabilities of approximately $2,850,00.00.
On the other hand, the Mother reports assets that comprise of: (1) $112,908.19 in accounts; (2) approximately $766,661.23 in retirement accounts; and (3) $2,135,834.39 in securities. The Mother reports no liabilities.
The Mother requests a sum of basic child support in amount of $5,530.00 per month and a pro-rata split on add-ons with the Father responsible for 74% of costs and the Mother responsible for 26% of costs. In opposition, the Father argues that he should only be responsible for $988.37 per month in basic child support and the add-on expense distribution should be allocated with 76.74% to the Mother and 23.26% for the Father.
The Father's argument relies heavily on the assumption that this Court need only look to the parties' W-2 incomes between 2021 and 2023 because the parties' AGI does not reflect actual earnings but rather is higher "due to a realized long-term capital gains." The Father's argument bares little merit as the appellate authority makes clear that capital gains can be considered in imputing an income to arrive at a child support award. (See e.g., Rennock v Rennock, 2023 AD3d 675, 676 [1st Dept 2022]; Matter of Cupkova-Myers v Myers, 63 AD3d 1268, 1270 [3d Dept 2009]["Capital gains are properly included in the calculation of a parent's income, particularly when, as here, a large portion of the parent's income derives from gains realized from the liquidation of investments"][internal citation omitted]). Further it is black letter law that the Court, "is not bound by the amount that was, in fact, reported on the parties' income taxes." (D.L. v K.G., 41 Misc 3d 1231[A][Sup Ct, Kings Cnty 2013, Thomas, J.]; see Leonx v Weberman, 109 AD3dc 703, 703-704 [1st Dept 2013]["A court need not rely upon the party's own account of his or her finances, but may impute income based upon the party's past income or demonstrated earning potential. The court properly took into account plaintiff's income from his investments, voluntarily deferred compensation, and substantial distribution."]). Here, ignoring the Father's other finances would only benefit the Father and harm the child. (See generally, South Carolina Dep't of Social Servs ex rel. Sallie M.H. v James C.D., 119 Misc29 649, 654 [Fam Ct, Kings Cnty 1983]["[C]hild support is for the benefit of the child."]).
The Court thus looks beyond the parties' W-2s and considers the financial circumstances of each party. In doing so, the Court finds that the proper income imputed to the Father is $900,000.00. This number is reached after a searching review of the Father's reported finances (which this Court notes are not fully transparent as he failed to provide a statutorily compliant net worth statement) including but not limited to, his reported wages, assets, liabilities, and capital gains. Likewise, it is appropriate to impute income to the Mother above her W-2 wages because of her large assets and no liabilities. The Court finds the appropriate sum of income to be imputed to the Mother to be $625,000.00.
With incomes established, the CSSA provides that the first step to ascertaining the Father's basic child support obligation is to determine the parties' combined parental income (CPI). (DRL § 240[1-b][c][1]. The current statutory cap for child support is $183,000.00. Under the cap, the parties' CPI is $183,000.00 with the Father holding 58.06% of this income and the Mother holding 41.94% of this income. The applicable child support percentage representative of support for one child is seventeen percent (17%). (DRL § 240[1-b][b][3][i]). Under the cap, the Father's basic child support obligation would be $1,505.32 per month. The Court finds the application of the statutory cap to this case would be wholly unjust and inappropriate. Among other things, the presumptive amount would cripple the Child's ability to maintain any modicum of her status quo, would prejudice the Mother in having to assume far beyond her pro-rata share of the child support amount to meet the Child's reasonable needs, and would deprive The Child [*3]of the financial benefit she should enjoy from both of her parents. Further, it is of important note here that the Child suffers from a disability. While the parties disagree as to how this diagnosis impacts the Child, there is no dispute, and the record before this Court demonstrates that the Child's struggles and such struggles have in fact increased the Child's reasonable expenses, by requiring, inter alia, medical and therapeutic interventions.
The Court rejects the use of the statutory cap in this case and, in an exercise of discretion, adjusts the cap to $650,000.00 (the adjusted cap). Klauer v Abeliovich, 148 AD3d 617 [1st Dept 2017][Affirming use of $800,000.00 adjusted cap]). Under the adjusted cap, the CPI is $650,000.00. The Father's income represents 58.06% of this amount and the Mother's income represents 41.94% of this amount. The annual basic child support obligation under the adjusted cap would be $64,161.29 per year or $5,346.77 per month. Accordingly, the branches of the Mother's Cross-Motion as they relate to a request for basic child support and add-ons is GRANTED to the extent that the Father shall pay directly to the Mother the lump sum of $5,346.77 per month as and temporary basic child support and the parties shall share in the costs of all add-on expenses incurred for the benefit of the child such that the Father is responsible for 58% of the cost and the Mother is responsible for 42% of such costs.
More specifically, the parties shall split add-on expenses 58%/42%, including unreimbursed medical expenses, therapy, extracurricular activities, camp, childcare, private school expenses for the child, including, but not limited to, tuition, lab and student fees billed by the school, uniforms, supplies, equipment, and school bus.
A specific issue arose in relation to the Child's attendance of private school. The Mother argues that the reason agreement was made for the Child to attend private school was because of the Father's "representation that he would pay for the cost" thereof. In response, the Father does not deny that this representation was made; rather, he argues that the Mother is trying to "shirk" her responsibility to pay for private school education for the Child. Importantly, the Father does admit that the Mother did not want the Child to be enrolled in the private school, by describing how the Mother did not attend the interview with the school and desired the child to attend public school. Indeed, he affirmative admits the Mother "objected to enrolling the Child in Riverdale."
The Court cannot reach a determination as to whether the Father did in-fact make the representation proffered by the Mother absent a hearing. Further, the Court notes that there is no signed agreement or any memorialization of this agreement. At this juncture, the proof does support the Mother's argument more than the Father's, but it does not prove a fact sufficient to warrant this court ordering the Father be responsible for 100% of private school education, especially in light of the parties' relative equal financial footing. Accordingly, payments to Riverdale will follow the aforesaid pro-rata split, subject to reallocation after trial where the issue can be properly resolved, and the Court can make determinations as to credibility.
As to health insurance, it is not disputed that the Father covers the family's health insurance needs. That is the marital status quo. On this motion, neither party has submitted proof to demonstrate what portion of the health insurance policy is attributable to the Wife and the Child; thus, this Court cannot reach a determination as to what percentage the Wife should be responsible for. Accordingly, the Court directs the Father to continue to pay 100% of the costs associated therewith consistent with the marital status quo, subject to reallocation.
This award is made retroactive to the date of filing of the Cross-Motion. Accordingly, the Father is liable for the aforesaid support amount for the months of October and November [*4]resulting in a total presumptive arrearage of $10,693.54. However, the record before the Court does not provide a clear conclusion if the Father has made any voluntary child support payments from non-marital assets since the cross-motion was filed. (See generally, Wolinsky v Berkowitz, 227 AD3d 433, 434 [1st Dept 2024]; M.M. v T.M., 35 Misc 3d 1231[A] [Sup Ct, Monroe County 2012]). To the extent that any such payments occurred, the Father is entitled to a dollar-for-dollar credit on those sums that will reduce the presumptive arrearage.
II. Counsel Fees
Both parties seek an award of counsel fees. The Father argues in sum that he should be awarded counsel fees because this motion sequence was necessitated by the Mother's failure to follow their agreement in principle following mediation sessions earlier in the proceeding wherein the parties allegedly reached a mutual understanding as to various issues in this action, including parenting time. On the other hand, the Mother argues that she, as the alleged non-monied spouse, is entitled to fees under Domestic Relations Law section 237 and otherwise should be entitled to fees under 22 NYCRR 130.1.1.
It is black letter law that DRL § 237(a) creates a rebuttable presumption that the monied spouse will pay for the reasonable attorney's fees of the non-monied spouse. The award of counsel fees is "measured by the circumstances and discretion." (O'Shea v O'shea, 93 NY2d 187, 192 [1999]). "An award of interim counsel fees ensures that the nonmonied spouse will be able to litigate the action and do so on equal footing with the monied spouse. Such an award 'is appropriate "to prevent the more affluent spouse from wearing down or financially punishing the opposition by recalcitrance, or by prolonging the litigation".'" (Prichep v Prichep, 52 AD3d 61, 65 [2d Dept 2008] citing, Gober v Gober, 282 AD2d 392, 393 [1st Dept 2001]).
Here, the Court, as noted supra, has found that both parties are of substantial means. In a similar vein, the case law around the issue of counsel fees focuses heavily on ensuring, "the economic disparity between the monied spouse and the non-monied spouse' and ensure that 'the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet.'" (Frankel v Frankel, 2 NY3d 601, 607 [2004] citing, O'Shea, supra at 190). Here, the Court cannot say that, on the submissions before this Court, that either party would be the "non-monied spouse" under the controlling authority.
The Court does acknowledge that the Father has an imputed income that is higher than the Wife's; however, this does not automatically import upon her the status of being a non-monied spouse. Indeed, this Court has found the Mother in-fact has an imputed income of $625,000.00. Both parties are in fortunate financial positions that enables them both to pay their own counsel fees. The reasoning in Frankel makes clear that the domestic relations law's "dramatic departure from the American rule that usually requires litigants to pay their own legal expenses" (Frankel, supra at 607) is premised on the concept that absent an award of fees in the context of matrimonial litigation the non-monied spouse will be forced to litigate on unequal footing. (Prichep, supra at 65). Here, the proofs before this Court reveal that neither party is the "non-monied" spouse in that they are both fully financially able to fund their own litigation. While the Father does in fact have a higher income that does not automatically result in the Wife being deemed the non-monied spouse.
In the legal historical context, it would be inappropriate to blindly apply DRL § 237 and find the Husband has a rebuttable presumption. The concept of a non-monied spouse is derived from the common-law rule of necessaries. (See Medical Business Assoc. v Steiner, 183 AD2d 86 [2d Dept 1992]). However, as society as progressed the rule has adapted to and been tempered in [*5]many respects. One of such changes being that the Husband is not the only party that can be liable for supporting the Wife; rather, either spouse can hold an obligation to pay for the costs of the other spouse regardless of gender. (Id. [Holding maintenance law that only imposed financial responsibility upon Husbands violated the equal protection clause of the US Constitution.]). Indeed, "the common law [must] adapt to reflect the strides that women have taken towards economic independence, and to acknowledge that in today's society, marriage is a 'partnership, with neither spouse necessarily dependent financially on the other.'" (Id. at 92, citing Jersey Shore Medical Center-Fitkin Hospital v Estate of Baum, 84 NJ 137 [NJ Sup Ct 1980]). Here, an award of fees to the Mother based upon a finding that she is the non-monied spouse would be not only unjust but a misapprehension of the law's common-law roots that have given birth to the contemporary jurisprudence on the issue of counsel fees.
Here, the financial circumstances of the parties demonstrates that there is no need for an award of fees as both parties have sufficient funds to fund their own litigation at this juncture. Further, while both parties argue the other has engaged in dilatory conduct, the proof before this Court demonstrate that both parties are to blame for such delay. The Mother has, at times, taken unreasonable positions as to parenting time and the Father's arguments on the issue of child support are devoid of any merit. Accordingly, both parties' requests for counsel fees are DENIED as they currently stand on equal footing in this litigation.
Decision date: November 27, 2024